Sed per Cur.

The exception would have been well taken, and would hold in its full force, if Millison had abandoned his improvement, and agreed to the return of survey as made by Light. But the defence rests on the opposite ground, and that he never *could be supposed freely to have given his concurrence, to such returns, abridging himself of part of his [*75 improvement, and the best part of his land. Whether the assis *75 tant surveyor has been guilty of a legal fraud or not, is almost the only question to be decided.
This cause had been tried before president Addison, in March term 1793, when a verdict passed for the defendants. Addison 52. It was now fully spoken to on the merits, by Messrs. Sample and Collins for the plaintiff, and Messrs. Ross and Young for the defendant; (and Yeates, J. being so hoarse with a cold that his voice could not be heard) Smith, J. gave the charge of the court.
After stating particularly the written as well as oral testimony, he observed, that if the paper titles only were to be judged of, the plaintiff’s title must prevail, being the earliest. But other circumstances deserve consideration. Light in April 1785, surveyed all the lands, under the two warrants of Millison. The former survey by Thompson being made without authority, has no weight or effect whatever. The improvement of acres of meadow would give a preference, unless it was after-wards abandoned ; because, no man shall by his act defraud the state, and yet gain a' benefit by his improvement. The first legal presumption which arises is, that the return of the survey made by Light was the real survey executed by him on the ground, with his consent, and that he relinquished the small portion of improved meadow, and agreed that the lands in question should be thrown- out of the survey. But this presumption may be encountered by other proof, either direct or circumstantial. Two strong circumstances are adduced for this purpose. The first is, that no marked line appears on the ground, dividing the lands returned from those in controversy. The second is, that lands of a much inferior quality are taken into the survey, while U2- acre of good meadow and the best bottom land are left out, by a line which passes within 50 perches of his door. It has been truly said, that no man, unless in a state of derangement,‘would prefer bad to good land. We have no evidence of this having been done with the direction, consent or knowledge of Millison ; and here are two presumptions opposing the common and legal one arising from the return. A surveyor certainly has no right to garble lands at his will and pleasure, and return what parcel he thinks proper. In an instance like the present, he should have stated the contents of the first survey to his employer and taken his directions thereon. I, however, for my own part, do not go so far as the witnesses, with respect to surveying and returning surplus lands. I rather think the deputy *was not obliged to make a return of so *76] large a survey as 900 acres, under warrants for 600 acres, and that the land office was not bound by their usage to accept so large a return. The first instructions to the deputy surveyors not to survey more than a surplus of 10 per cent, on each hundred acres contained in a warrant, took place in 1766, and arose from a desire to accommodate the different appliers with lands, and the fees of the different officers were regulated *76 thereby. But when it was discovered that the proprietary institution might be evaded by taking out warrants in the names of other persons, the rule of practice still continued, though the reason of it had long before ceased. However, before the revolution, whenever the deputy surveyor certified, that the surplus lands beyond the 10 per cent, were only desirable for the lands in the warrants, there was little hesitation as to the accepting of the return of survey of such surplus. I know of no rule on the subj ect. If the present contest rested merely on the point, whether 450 acres should not have been returned on each of Millison’s warrants, as a matter of right, I should incline against the defendant, but I give no decided opinion thereon. The practice of surveyors since the revolution would have much weight.
Referred to in i S. & R. 136.
Cited in 4 S. & R. 434 to support the proposition that no one should be permitted to allege a settlement at any time prior to the day mentioned in his warrant, for the commencement of interest, because such an allegation would be contrary to the averment in the warrant.
Cited in 7 Watts 236; 4 W. & S. 79; 12 Pa. 91; 40 Pa. 167.
Upon the whole, the question turns chiefly on this point, whether Millison knew and consented, that these 22of- acres should be thrown out of his survey. If this was the case, and he concurred therewith at the time, he and his heirs shall be bound by it, however injudicious the act was. On this head, we have stated, that the legal presumption is in favour of the present plaintiff, and have also shewn the circumstances repulsive of this presumption, which will have their proper weight in the minds of the jury. Certain it is, that Millison soon evinced a dissatisfaction with the conduct of the deputy surveyor’s assistant, by erecting a cabin on the disputed ground, directly after he had heard that the adverse warrant had issued from the office. And the meadow fence standing on the lands in controversy, was full notice to the lessors of the plaintiff to put them on the inquiry respecting the right of the soil. Under all the circumstances of the case, as disclosed on the present trial, we both are strongly inclined to think there should be a verdict for the defendant.
Verdict pro def.