61] . *HULSE, MONTELLIUS & FULLER *v.* S. WRIGHT.

Injunction—answer—fraudulent purchase of goods—receiver—assignments to secure preferred creditors—fraud—trust—jurisdiction—waste—insolvency.

On a motion for a provisional injunction, the defendant may file and read his answer to the bill.

A creditor who has sold goods to another, on time which has not expired, cannot, by alleging a design in the debtor to dispose of his property to pay other creditors in preference to him, or by alleging that he is sacrificing to keep up his general credit, obtain an order for a receiver and administration of the debtor's effects for the benefit of all the creditors.

Such claim to a receiver is not upon principles analogous to those which govern chancery, in taking charge of the estate of lunatics and imbecile persons.

Where goods obtained under fraudulent representations remain in specie, chancery will aid the defrauded to obtain possession, and set aside the fraudulent contract.

The courts of law have concurrent jurisdiction with chancery in cases of that kind, and by regarding the contract as violated by the fraud, either enable vendor to reclaim his goods, or hold the sale one for cash, instead of one on credit, and so enable him to recover the amount immediately.

Where an insolvent debtor has assigned his effects for his creditors, a trust is created, and chancery will control its execution; but chancery cannot, in anticipation of insolvency, create a trust, order a transfer by the debtor to a receiver, and take the administration of their effects upon the principles of bankruptcy.

The general chancery jurisdiction in Ohio is as broad as that exercised in England.

*Quere*—If the mode in common use among merchants about to fail, of assigning their effects to secure preferred creditors, is not fraudulent?

IN CHANCERY. The bill set forth that the defendant, a short time before, purchased of the complainants, in Philadelphia, a quantity of merchandise, and soon afterwards became insolvent. That he was, at the time of purchasing the goods, in failing circumstances, which he concealed. That the complainant has called for payment, and proposed a compromise for a part of his debt, or to take the goods, which defendant refused, declaring that he would be able to pay if let alone; but that he intended first to pay or secure his confidential creditors. The bill asserts that there is danger of a total insolvency, and a transfer of all the property to preferred creditors, if the defendant is not enjoined. It asserts also, that the defendant is sustaining his bank credit by ruinous sacrifice of the goods, to raise money at two and three per cent. a month of brokers. An injunction is prayed for, the appointment of a receiver to settle the insolvent's affairs, and that he may be compelled to assign his property for the benefit of all his creditors.

*Chase* and *King*, for the complainants, having given notice, move for an injunction, and the appointment of a receiver. They cite 1 *Ves. Jr.* 282; 13 *Ves. Jr.* 266.

*Caswell* and *Starr*, contra, had leave, in the argument, to read the defendant's answer.

Hulse, Montellius and Fuller *v.* Wright.

WRIGHT, J. gave the opinion of the Court. The case made in the bill is this: A man in failing circumstances, and in contemplation of insolvency, without disclosing his embarrassments, has purchased *goods of the complainants, upon time, which has not [62 expired. Having by this suppression of truth obtained the goods, he, in order to keep up his sinking credit, is selling them at great sacrifice, and is wasting his estate, by paying two or three per cent. a month interest, and moreover, threatens to transfer his whole property, to pay certain preferred debts, of creditors usually denominated confidential, in fraud of his general creditors. The bill seeks the interference of this court to restrain the defendant from these fraudulent acts, and in aid of the general creditors.

The defendant having had notice of the intended application for injunction, appears and offers his answer to the bill, on oath, in which he denies the purchase in contemplation of insolvency, the fraud and the threatened assignment, and discloses the state of his affairs. From this it appears, that his means consist, by his own estimate,

| | | |
|---|---|---:|
| 1. Of real estate, amounting to . . . | | $30,000 |
| 2. Debts outstanding, . . . . . | | 100,000 |
| 3. Goods on hand, . . . . . . | | 35,000 |
| Total, . . . . | | $165,000 |

That his liabilities are—

| | | |
|---|---:|---:|
| 1. Due to confidential creditors, . | $60,000 | |
| 2. Due to general creditors, . | 80,000 | |
| | | $140,000 |

Leaving a balance in his favor, of . . . $25,000

He alleges that he is endeavoring to sell, for the benefit of the whole of his creditors, but considers it his duty to pay the preferred creditors first, because their debts are for cash and acceptances, and the others for merchandise obtained in the regular course of business. He admits that he has refused to make an assignment, and alleges that he does not intend to assign his property, if he can help it, but to manage it himself.

The first question made is one of practice, whether the answer of the defendant, upon applications for provisional injunctions, shall be received. If the provisional writ is allowed, the usual practice is to receive an answer upon return of *subpœna,* and immediately entertain a motion thereupon to dissolve the injunction. Why not, then,

Hulse, Montellius and Fuller *v.* Wright.

hear it, when the application is made in term time, on notice? The object of the notice is to afford the defendant an opportunity to 63] *resist the application; and it seems to us good practice to allow him to file his answer, to present the question on its merits, and bring the whole case into view, so far as it regards the allegations of the parties.

The case on the bill and answer is this: Wright, having recently bought goods of the complainant, on time not yet expired, has become embarrassed, and unable to meet his engagements. A part of his debts he esteems confidential, and according to the practice of the mercantile community at this day, intends to prefer these creditors, by applying the proceeds of his estate to discharge their debts in full, before anything is applied to his other debts. That he has on application refused to pay or secure the complainants, or to assign his effects for the benefit of all his creditors; but, if *compelled* to close his affairs, he intends to assign in order to secure the preferred creditors first. Upon this state of the case, we are asked to confiscate his effects, and place them in the hands of a receiver, for the benefit of all the creditors. Our aid for the attainment of the end is invoked in argument, through either of three heads of chancery jurisdiction :—1. Waste. 2. Fraud. 3. Trust.

1. It is urged that this aid may be afforded, where the fee is in one, and the use in another, and a charge of irreparable injury is threatened to the complainant's property. This case does not appear to us within this head of chancery jurisdiction. The complainants here claim no property in the thing to be disposed of; but set up only a future right of action, and a fear, that if the defendant is not restrained in the use of his means, their ultimate chance of payment will be diminished, by the improvidence of the defendant. Sometimes chancery restrains *minors* and *lunatics,* and latterly, those who have become imbecile from old age, from disposing of their property, and place it in charge of a commissoner; but no analogy is perceived between such a case and the claim of the complainants.

2. As to fraud. The answer denies the allegation of fraud in the bill, and completely neutralizes it. The defendant denies having misrepresented his situation, to induce the sale to him, or that he purchased with a view to insolvency. The case, as it appears before us, is, therefore, stript of the alleged fraud. But, if it were admitted, what effect would it have on the case? If the property remained in specie, unchanged, it might be pursued at law. Courts of law now hold, that fraud in obtaining goods leaves the property in them in the hands of the *vendor,* and, *as against the vendee, un-*

Hulse, Montellius and Fuller *v.* Wright.

*changed.* Courts of law, in such cases, may restore the posses-
*sion of the goods, or if the goods in specie cannot be reached, [64
may hold the sale upon credit, one for cash, and thus enable the
vendor to recover the amount immediately. This court, exercising
concurrent jurisdiction in all cases of fraud, will, where the property
is identified, aid the defrauded creditor in pursuit, and where there
is danger of its being transferred beyond his reach, will enjoin the
holder from removing it, or changing its character, until a hearing
can be had. It has power, also, to prevent goods, thus acquired,
from being taken away from the vendor, and fraudulently placed in
the hands of a confidential creditor, particularly when the confiden-
tial debt, and the credit resulting from it, were, perhaps, the princi-
pal means in inducing the vendor to part with his goods on credit.
Should such a case be brought before us, we should examine our
jurisdiction, with a strong desire of finding some way of giving re-
lief against such palpable injustice.

3. The trust. What is there in the case before us like a trust?
It is said, the insolvency creates a trust in the debtor, of his own
property, for the benefit of his creditors. A trust exists where one
person is managing the property of another. If a debtor can, in
any case, be held the trustee of his creditors, it can only be where
the property is unchanged. It seems to us, we are asked to *create*
a trust here, rather than to carry one into execution. We are, in
effect, asked to establish, in chancery, a bankrupt law and to com-
pel a debtor to transfer his property to officers of the court empow-
ered to close his affairs, because he does not pay his debts, or com-
ply with his contracts. However desirable to a mercantile com-
munity a bankrupt law is, it will hardly be seriously urged, after the
numerous struggles to obtain such an act in congress, upon whom
the power to pass a law of the kind is expressly conferred in the con-
stitution of the United States, that chancery has within its ordinary
jurisdiction power to introduce the bankrupt principle in common
controversies, between debtor and creditor. Again: if it appeared
that an assignment had been already made by the debtor, favoring
certain creditors to the exclusion of others, the way might be opened
in this court to control the trust fund. Then a trust would have
been *created*, and the aid of chancery successfully invoked to direct
the application of the trust fund, upon the equitable principle of
equality, to prevent injustice, and to compel an account. The case
of a partnership, urged by the complainant's counsel, is not analo-
gous to this case. There each copartner holds the joint funds in *trust*
for the partnership, and also for the *individual copartners.* The
case of executors is one of a legal trust, created *by law, and is [65

Hulse, Montellius and Fuller *v.* Wright.

therefore within the control of chancery. But it is urged, and a case in 1 *Jac. & Walk.* Ch. 405, is cited to support the assumption, that if chancery will control effects after an assignment, it will interfere to prevent an assignment. We think this not universally true. The case in *Jac. & Walk.* was an application for a writ of *ne exeat,* to prevent the taking property out of the realm, under certain circumstances, which was granted. This court, in a similar case, would exercise the same power.

It is now becoming a general practice, with merchants, to prefer certain creditors when a failure is in view. The evil is increasing daily, and it is desirable to find some way to check it. There may be cases of *gross fraud,* in which the court might interfere. Where the preferred creditor's claim originated in a secret credit, to enable the debtor to hold out the appearance of wealth and standing, and thus, upon such false use of the creditor's means, enabling him to acquire the property of others upon credit, it would be manifestly against the first principles of equity, that property so acquired should be passed into the hands of one, at least, *quasi particeps criminis.* Such practices are said to exist, and to be reconciled in mercantile communities with principles of honor. It strikes me to be sheer fraud, and in a proper case, that chancery will relieve against it. But, before we interfere with a man's property, who is in possession of his reasoning faculties, in order to confiscate it for his creditors, we must have a clear case, and clear law or usage to support us.

While the general chancery jurisdiction in Ohio is as broad as that exercised by courts of chancery in England, it is not, either there or here, without other limit of what is right or wrong than the will or discretion of the chancellor. In that country, and in this, chancery jurisdiction is as clearly defined as that of courts of law, and the chancellor has no more right to enlarge his power than a judge of a court of law. It is true, public exigencies, and the ingenuity that accompanies the infinite variety of human transactions, sometimes call for a *new* application of an old principle, and gives occasion for the remark, that the law expands with the exigencies of society, and the mind of the judge. In general, it is safer to leave it to the legislature, to enlarge the jurisdiction so as to meet ingenious fraudulent contrivances to effect injustice, than for the judges to grasp at new jurisdiction and power. We will not reject any power conferred upon us, or refuse to do our duty, on account of consequences; yet, we cannot enter an entire new field, in exercising our jurisdiction, without a clear case, or very urgent necessity.

The injunction is refused.