# Darrah and Carrier *versus* Bryant.

1. Generally where lines are not marked on the ground, calls for adjoiners prevail over distances.

2. Lines marked on the ground or adopted by the surveyor control both distances and calls for adjoiners.

3. A line made between the districts of two deputy-surveyors was legally obliterated by the consolidation of the districts into one, and the deputy for the new district was not bound to notice it in making surveys.

4. Where one survey calls for another as an adjoiner, and no lines are found to have been run *for the first*, or adopted, and nothing to contradict the call but the distances, the line of the survey called for becomes the division line of the two tracts, in the absence of fraud or mistake.

5. Should the warrantee by such survey obtain too much land, a junior warrantee cannot lay his warrant on any part included in the elder survey, if the Commonwealth does not complain.

6. When warrants are surveyed as a block, they must be located as a block.

October 24th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the Court of Common Pleas of *Jefferson county :* No. 87, to October and November Term 1867.

This was an action of ejectment, brought by Walter Bryant

[Darrah *v.* Bryant.]

against Edward H. Darrah and Isaac C. Carrier, for 75 acres of land in Polk township. The writ issued May 2d 1864.

The plaintiff to show his title gave in evidence warrant No. 2750 of December 13th 1792, surveyed November 11th 1794, for Wilhelm Willink and others for 900 acres, the north and south lines being 477 perches, calling for "William Willink & Co." as adjoiners on the west; also warrant No. 2744 of same date, surveyed November 28th 1794, for Willink for 900 acres, calling for "Wilhelm Willink & Co., No. 2750," as adjoiners on the south and "Willink & Co., No. 2768," as adjoiners on the west; also warrant No. 2768 of same date, surveyed November 25th 1794, for Willink and others for 850¼ acres, calling for 2744 and 2750 as adjoiners on the east, the north and south lines being 412 perches long. He also gave in evidence a deed from the treasurer of Jefferson county dated December 21st 1831, for lots No. 2744 and 2750, to the county commissioners on a sale for taxes; deed dated July 7th 1837, for same lots from the commissioners to E. Heath and J. J. Y. Thompson; release dated May 7th 1839 from Thompson of his interest in same lots to Heath; deed dated May 15th 1854, from Heath to Bryant, the plaintiff, for 94 acres of 2744 and 528 acres of 2750; also deed from the treasurer of Jefferson county dated September 14th 1854 to J. J. Y. Thompson for 2768 after sale for taxes as containing 924 acres; also deed from Thompson, dated August 16th 1859, to Bryant, the plaintiff, for 70 acres, the land in dispute, described as "beginning at a chestnut between the district line and 2750 and 2744," &c., and recorded December 6th 1859.

The defendants alleged that the land in dispute was not included in lot 2768, but that it had been a gore of vacant land *between* the east line of that lot and the west line of lots 2744 and 2750, and they gave in evidence a survey, dated June 2d 1857, made by J. J. Y. Thompson, then county surveyor, for Seth Clover for 296 acres, &c., under warrant to John Nicholson, including the land in dispute; this survey was abandoned; also a survey for Clover, dated April 1st 1863, made by James Caldwell, the county surveyor, and patent, dated May 23d 1864, for the land in dispute; also deed from Thompson to Bryant, dated August 14th 1856, and recorded, for No. 2768 described as bounded on the east by the district line; also the drafts of 2744, 2750, 2768, 2770 and 2811, surveyed November 28th 1794.

They called James Caldwell, who testified:—"The district line is seven or eight years older than the Holland line of 2750 and 2744; nothing marked east of the district line; no tree found on the east of No. 2768 at where the calls would make the distance." He also testified that a short time after Thompson had made the survey of 1857, he (Thompson) said that he had no doubt the land in dispute was vacant.

[Darrah *v.* Bryant.]

Another witness of defendants testified that the west line of 2768 was 438 perches from the district line.

It appeared in the case that the west line of 2744 and 2750 is marked on the ground, that the "district line" is 37 perches west of this line, which would make the distance from the west line of 2768 to the west line of 2744 and 2750 to be 475 perches, being 63 perches more than the distance of the north and south lines of 2768, as called for on the original survey. It appeared further that William P. Brady was appointed, April 18th 1792, deputy surveyor for district No. 5, including what had been Johnston's and Potter's district and that the "district line" spoken of was the line between Johnston's and Potter's districts. It also appeared that lots 2777, 2770, 2768, 2750 and 2744 on warrants dated December 13th 1792, and 2811 on warrant dated December 12th were surveyed from November 11th to November 28th 1794 by Brady for Wilhelm Willink & Co., and all returned May 20th 1795. The annexed diagram, from a connected draft of the original official surveys, exhibits the relative position of the above six lots:—

The plaintiff submitted the following points:—

1. Tract 2768 calls for tracts 2750 and 2744 as adjoiners, and

[Darrah *v.* Bryant.]

there being no lines marked on the ground on the side of 2768, which calls for 2750 and 2744, the line of the later tracts becomes the division line between the tracts.

2. Tract 2768 calls for 2750 and 2744, and that being the case there could be no vacancy, unless the lines marked on the ground contradict the calls.

3. The east line of 2768 not being actually marked on the ground, the survey is to be carried.to its calls for adjoiners, even though it overrun the distances returned on the survey.

4. The surveys, Nos. 2768, 2770, 2777, 2811, 2744 and 2750, being made and returned into the land office in blocks, they are to be located on the ground in blocks.

5. Under all the evidence in this case the verdict of the jury must be for the plaintiff.

6. There is no such evidence of estoppel in this case as will conclude the plaintiff—there being no evidence that the declarations of Thompson to Caldwell were carried either to Bryant or to Clover.

7. The declarations of Thompson made five years before Clover's warrant, and having sold in the mean time to Bryant, who put his deed on record before Clover's survey and warrant, would not estop Thompson.

The court (Campbell, P. J.) answered the 4th point: "That, whether the tracts enumerated were surveyed in blocks or not, is referred to the jury; if they were we answer this point in the affirmative;" and affirmed the other points.

There was a verdict for the plaintiff.

The defendants took a writ of error, and assigned for error the answers to the plaintiff's points.

*W. P. Jenks,* for plaintiffs in error, cited Prout *v.* Bard, 10 Watts 375; Vastbinder *v.* Wager, 6 Barr 342; Farmers' and Mechanics' Bank *v.* Wilson, 10 Watts 263; Malone *v.* Sallada, 12 Wright 419; Weidman *v.* Kohr, 4 S. & R. 174: Willes *v.* Swartz, 4 Casey 413; Brown *v.* Bank of Chambersburg, 3 Barr 199.

*A. L. Gordon,* for defendant in error, cited Hagerty *v.* Mathers, 7 Casey 355; Younkin *v.* Cowan, 10 Id. 198; Cox *v.* Couch, 8 Barr 147; McGinniss *v.* Porter, 8 Harris 80; Mathers *v.* Hagerty, 1 Wright 64; McBarron *v.* Gilbert, 6 Id. 268.

The opinion of the court was delivered, October 31st 1867, by STRONG, J.—On the trial of this case in the court below the contest was over the question whether the land in dispute is a part of a tract surveyed in 1794, by virtue of a warrant granted to Willink & Co., and numbered 2768. The allegation of the

[Darrah v. Bryant.]

plaintiff was that the survey extended eastwardly to a marked line, the western boundary of tracts surveyed about the same time, under warrants granted to the same warrantees, and numbered 2744 and 2750. On the other hand, the defendants contended that the survey of 2768 stopped 37 perches short of the west line of the other two tracts, thus leaving a gore of unappropriated land. The west line of tract 2768, and the west line of the two tracts 2744 and 2750, were not in dispute.

They were well marked upon the ground and they are traceable. It is the location of the east line of 2768 which was the subject of controversy. The return of the survey called for the tracts 2744 and 2750, as its eastern boundary, but the distance from its west line to those tracts falls short of the actual distance about 63 perches. On this state of facts the learned judge in the court below instructed the jury in substance that in locating it the survey was to be carried to its calls for adjoiners, though it overran the distances returned. It is not denied that as a general rule, where lines are not actually marked on the ground, a survey is to be carried to its calls for adjoiners, though in so doing the distances returned on the survey must be extended.

Ordinarily a call for adjoiners prevails over distances : Younkin v. Cowan, 10 Casey 198 ; Cox v. Coach, 8 Barr 147 ; Mathers & Boynton v. Hegarty, 1 Wright 64. It is true that lines marked on the ground for the survey, or adopted by the surveyor, are to be regarded rather than calls for adjoiners, and when there is a discrepancy, the lines govern, controlling both distances and calls for adjoiners. And had there been any evidence here that the surveyor had marked upon the ground any line as the eastern boundary of the tract 2768, or that he had adopted a line previously made, the instruction given to the jury would have been erroneous. But there was no such evidence. No line was marked upon the ground at the distance of 412 perches from the west boundary of the tract, the length east and west of the survey as returned.

Nor is there any line found marked, or made for the survey short of the west boundary of the tracts called for as adjoiners. At the distance of 438 perches from the western boundary of 2768, there is a north and south line marked upon the ground, and the effort of the defendants below was to establish this as the east line of the survey. But it was conclusively shown, and not even denied, that the line was made for another purpose than as a boundary of the survey. It was made seven or eight years before the survey as a district line dividing two deputy surveyors' districts, and in 1792 it ceased to be a district line in consequence of the consolidation of the districts on each side into one. After the union of the districts the line was of course legally obliterated, and the deputy surveyor of the new district

[Darrah *v.* Bryant.]

was not bound to notice it in making his surveys. It was competent for him to run his surveys across it as if it never had existed. Not having been run for the plaintiff's survey, the fact that it is traceable upon the ground still, is a fact of no importance in the absence of all proof that it was adopted as a boundary. It is not to be treated as a marked line made at the time when a survey was made, the existence of which could not be accounted for unless it was made as a boundary line. Undoubtedly the surveyor could have adopted it, and thus made it the east line of the tract.

But not a particle of evidence was given of any such adoption, nothing which should have been submitted to the jury to open the question whether there had been any. The survey as returned calls for adjoiners, not for the district line, or any other than the boundary of the two tracts, 2744 and 2750, and the distance of the eastern boundary returned falls 26 perches short of the district line.

There is therefore no correspondence between the distance and the position of that line.

It is plain that the lines from east to west were not actually run on the ground. The surveyor did not therefore come to that line, and hence there was nothing to control the evidence of location exhibited in the return. At most the case presents a call of one survey for another as an adjoiner, and no lines found to have been run *for the first*, or adopted; nothing to contradict the call, unless it be the distances returned. In such a case the line of the survey called for invariably becomes the division line of the two tracts, in the absence of proof of mistake or fraud.

And mistake or fraud is not shown by the fact that thereby a greater number of acres are included in the first survey than the number mentioned in the surveyor's plot as returned. In the present case the contents of lot No. 2768 were returned as 850¼ acres, and if the survey is carried to the adjoiners called for, it is said the tract contains 123 acres more. This is not a greater excess than is often found in proportion to the size of the survey. If the warrantee thereby obtained too much land, it was for the Commonwealth to object. It is not for a junior warrant-holder to lay his warrant upon any part included in the elder survey so long as the state does not complain: see Hagerty *v.* Mathers, 7 Casey 355; Younkin *v.* Cowan, 10 Casey 201.

These observations lead to the conclusion that there was no error in the instruction given to the jury complained of in the first three assignments.

The 4th assignment is that the court erred in their answer to the plaintiff's 4th point, which was as follows: "That the surveys Nos. 2768, 2770, 2777, 2811, 2744, 2750, being made and returned into the land office in blocks, they are to be located on

[Darrah v. Bryant.]

the ground in blocks." To this the court answered, " whether the tracts enumerated were surveyed in blocks or not is referred to the jury. If they were, we answer this point in the affirmative." There is certainly no error in this of which the defendants can complain. There was abundant evidence that those surveys were made in blocks. They were on warrants to the same warrantees, issued the same day, all to Brady, the deputy surveyor, surveyed in the same month, returned into the land office on one day, and they called for each other, those on the west calling for the east, and those on the east calling for the west; and if they were surveyed as a block, they must be located as a block; Hagerty v. Mathers, 7 Casey 355; for the location must correspond with the survey.

The only other question in the case was whether there was any evidence of an estoppel to the plaintiff against asserting that the east line of 2768 was the western boundary of tracts 2744 and 2750. Clover's title, that under which the defendant claimed, commenced in 1863. His survey was made on the 1st of April in that year. But prior to that time, J. J. Y. Thompson, who owned lot 2768, had conveyed it to the plaintiff by deed describing it as bounded on the east by the district line, and the deed was recorded. This deed was made on the 14th of August 1856. Thompson also made a survey of the land east of the district line for Clover on the 2d of June 1857, by virtue of a warrant granted to John Nicholson, but the survey was abandoned. He said also some time after that he had no doubt the land was vacant. If there had been any evidence that these acts and declarations had been communicated to Clover before he took out his warrant and had his survey made, and that he had acted in reliance upon them, there would have been some evidence to raise an estoppel. But there was no such evidence. It is manifest that Thompson was ignorant of the lines of his own tract. He had bought a tax title, and was not informed of its extent. But on the 16th of August 1859, having doubtless ascertained where the true line was, he conveyed the part of the tract lying east of the district line to the plaintiff. This second deed was recorded on the 6th of December, in the same year. When, therefore, Clover caused his survey to be made on the 1st of April 1863, he was informed not only by the records of the land office, but by Thompson's two deeds on record in the county, that the entire land, up to the western boundary of 2744 and 2750, had been appropriated. Of course there was no basis for an estoppel. It follows that the defendant was without any valid defence, and that the jury were properly instructed that the plaintiff was entitled to a verdict.

Judgment affirmed.