## Boynton *versus* Urian.
## Urian *versus* Boynton.

1. In ascertaining any one of a block of warrants all surveyed the same day, it is necessary to begin with the first or leading warrant.
2. Nothing could prevent the last of the series from claiming its distance on the ground but a line on the ground for its boundary or as the boundary of another and prior warrant.
3. If the boundary of an adjoiner were in a similar situation, even if the oldest survey, it would take no more than its distance.
4. Courses and distances make the survey where lines on the ground are not to be found, except in case of calls for adjoiners.
5. *Surface* measurement is the only kind ever in practice by the district surveyors of this state and where the court below charged that the warrantee would be entitled to a measurement made as the surveyors who located the warrant measured, and not an air line, it was *held* not to be error.

March 25th 1867. Before WOODWARD, C. J., THOMPSON and STRONG, JJ. AGNEW, J., at Nisi Prius. READ, J., absent.

Error to the Court of Common Pleas of *Clearfield county*.

In the court below Henry S. Urian brought an action of ejectment against Jonathan Boynton and James Forrest, to January Term 1858.

Writs of error to the judgment in the case were taken by both the plaintiff and defendants.

The case was tried at a special court before Wood, the president of the 20th district.

Urian, the plaintiff, claimed under a warrant, January 24th, and survey, October 28th 1794; return, February 24th, and patent, April 10th 1795, to Henry Drinker. This tract was one of a batch of three warrants surveyed on the same day, and known as the Drinker surveys. Boynton, the defendant below, claimed a tract immediately west of Urian's, known as "the Michael Concle," under a warrant, January 21st, and survey, October 21st 1794, return, April 29th 1795, and patent, November 6th 1804, to John Warder. The dispute was as to a strip of land at the dividing line of the two tracts.

The annexed diagram shows the location of the several surveys as found on the ground.

A, B, C, D and E enclose the block consisting of the three "Drinkers," bounded on the north by older surveys of 1792, called the Stewart surveys, and on the south by tracts in the name of Morris *et al.*, called the Gratz surveys.

F, G, H and I lines show the "Mary Morris," and the prolongation of her lines through or into the Drinker body.

C, K, S and M show the "Michael Concle," as run off by starting at the white-pine corner of the Depui, Steinhison and Concle, thence south 328 perches (13 perches over distance) to the line of Ephraim Concle, thence east, on level ground, 230 perches (official distance) to pointers 58 years old, thence north 328 perches, and thence west to the place of beginning, giving it 471 acres and eighty perches of land, or 44 acres and 50 perches more than is called for by the survey and patent.

The land between the Morris line and Concle line is the disputed land—a strip 56 perches wide and 328 perches long, containing about 114 acres.

The dotted line between the Morris line and Concle line, as above stated, is a line run and marked by George Wilson, about 12 years ago, and is called in the evidence the "Wilson line."

On the line east from the north-west corner of the Concle tract there is a deep ravine, the surface being broken ground—a surface measurement is 254 perches, and would overrun a level measurement about 24 perches. The north and south lines of the Drinker tracts were established as of 1792 and 1794. The line from the maple between Mary McLanahan and Robert Rainey counts to 1794. The distance of the northern line of "Michael Concle," by the official survey and the patent, is 230 perches. G. Wilson, a witness, who surveyed for the defendants, testified that he established it as the western line of the Concle tract, and that it was 20 perches further east than it ought to be, according to the official distance.

T. Moore, a surveyor, and a witness for the plaintiff, testified that the line from the maple, at the corner between Rainey and Mary McLanahan, "runs partly through Henry S. Drinker, and stops 29 rods short of the other line. There were five trees large enough to have been marked if the line had been run, and were not. The surveys on the south of the Drinker are known as the Gratz surveys, purporting to be made in 1794. The Gratz surveys are well located. The north line of the Drinker surveys is fixed on the ground by the line of 1792, the south line is fixed by the Gratz land."

Another witness for plaintiff, also a surveyor, testified: "The Henry S. Drinker survey covers the land in dispute by my location. The prolongation of the lines of the Mary Morris and its

[Boynton *v.* Urian.]

[Boynton *v.* Urian.]

sister surveys is not, I think, the boundary line of the Michael Concle and its sister surveys. The distance between the old lines is too great for the Concle survey. The tier of surveys south of the M. Concle, by the official drafts, is 21 perches wider than it is." This witness commenced his running at a chestnut oak corner on the north line of the Henry Drinker, Jr., and ran west. He found the distance from the north-west corner of the Concle tract, east to the line claimed by the defendants, as the true line between Concle and Drinker, to be 248 perches. He further said that, in running west from his initial point along the three Drinker surveys, the line overruns the official distance by 9 perches.

S. F. McCloskey, another surveyor, testified for the plaintiff: "The Henry S. Drinker is properly located to cover the land in dispute. The old line of 1794, that runs through the Drinker, I do not consider as the boundary line of the Concle and its sister surveys. The returns, and that line on the ground, indicate to me that the old 1794 line, running through the H. Drinker, is an extension of the line of the batch of surveys lying south of it.

" The return of the surveyor of the Mary Morris, &c., indicates that he had abandoned the line above the Morris and laid the Henry S. Drinker over it. By the official survey I find that the H. S. Drinker is laid on that line; part is on both sides of it. The proper point to start in locating the Drinker surveys is the chestnut oak. I was on the line of 1794, claimed to be the eastern boundary of the Michael Concle. It dated to 1794; at the north corner of that line I found no marks; it is a barren ridge, no living thing close by of that age to make a mark. I would locate the Henry S. Drinker first, and then locate the Concle and the balance. The Drinker is a younger survey than the Concle; when the older survey calls for a younger, I would locate the younger first; a true measurement would be a horizontal line.

" Giving the defendants their official distance, it still gives the plaintiff 18 rods in width of the disputed land. If I were locating the Concle survey first, I would stop at the Wilson line, it being the official distance. It was a surface measurement."

J. L. Cuttle, another surveyor, testified: " The Gratz lands adjoin the Drinker on the south; they are as well located a body of surveys as any I ever was on. The location of the H. S. Drinker, as located by Mr. Moore, Mr. McCloskey and myself, is properly located. The line of 1794, that runs through the Henry S. Drinker, is not the line of Michael Concle and its sister surveys; the Drinker surveys are not returned by those lines, but by lines of their own.

" The line of 1794, from the maple to the Drinker, is the line of the Gratz surveys."

5 P. F. Smith—10

The official survey and patent of Drinker call for "William Stewart," on the west—this is the Concle tract.

The official survey and patent of the "Michael Concle" tract call for "Henry S. Drinker" on the east.

The plaintiff submitted the following point amongst others:—

4. If the jury believe that the block of surveys composed of the three Drinkers is well located by the lines and corners of the 1792 surveys on the north and by the Gratz surveys on the south, and that the body or block of surveys of which the Michael Concle is one, has no eastern boundary save as determined by the return of the Drinker and Gratz surveys, then the return, acceptance and patenting of the Henry S. Drinker survey, with continued acquiescence therein by the owner of the Michael Concle, and the call of his survey and patent for the "H. S. Drinker," raise a conclusive presumption that the same was made as returned, and the verdict must be for the plaintiff for all the land in the Drinker survey;

Which the court refused to affirm.

The defendant submitted the following point amongst others:—

"8. In ascertaining the distance, the Michael Concle is entitled to a straight level measurement, and a mere surface measurement of 230 perches, over hills and uneven ground, is not enough.

To this point the court replied:—

"The Michael Concle would be entitled to its distance, by a measurement made in the same manner as the surveyor who located the warrant and made the surveys measured it, and not by an air line. We therefore refuse to answer this point as requested."

The court charged:—

"It would appear that the dispute is, in reality, only as to a strip of land, some 53 rods wide, and 340 rods in length.

"This piece of land the plaintiff claims to be included in the survey on a warrant taken out in the name of Henry S. Drinker; while the defendants claim that it is not covered by this survey, and allege that, even if it is, the plaintiff cannot recover, as it is included in the survey on the Michael Concle, which they claim to be the older and better title.

"How this is we are now to inquire. The plaintiff, to sustain the issue on his part, has shown a warrant and survey in the name of Henry S. Drinker, which was made on the 28th October 1794, and returned into the land office on the 24th day of February 1795, and that it was patented about the same time.

"He has also shown that the title to this land has become vested in him, by certain legal conveyances and assurances. We start then with the undisputed fact, that the land embraced in this warrant and survey belongs to the plaintiff.

"It follows, therefore, that if the land in dispute is embraced within its boundary, he would be entitled to recover, unless the

defendants have shown that there is a superior title to the one under which the plaintiff claims. The surveyors, who have been called by the plaintiff to locate the Drinker surveys, state that they find the corner at the chestnut oak fixed and certain, as the established corner of the Henry Drinker, Jr. This is the leading warrant and survey of the batch they call the Drinker surveys, consisting of the Henry Drinker, Jr., the Joseph D. Drinker, and the Henry S. Drinker.

"If the location of the leading warrant in a batch or block of surveys can be correctly ascertained, there would not be much difficulty in locating them all, as the one calls for the other, and they would have to be laid, then, one adjoining the other consecutively, according to their calls.

"If, then, we have a fixed and established corner by which to locate the leading survey, we would have no difficulty in getting at the proper location for all. If you are satisfied from the evidence that the chestnut oak is an established corner of the Henry Drinker, Jr., then take it as the starting-point, and regarding the established lines of the older surveys it calls for, and we have it properly located by its official courses and distances. Then locate the Joseph D. Drinker next to it, according to its calls, and then the Henry S. Drinker adjoining the Joseph D. Drinker. As we have said before, this would be the proper manner of locating this block or body of surveys.

"We have the old lines of 1792 and 1794 established and fixed on the north and south of these Drinker tracts. If then you locate the Henry Drinker, Jr., as we have indicated, and the Joseph D. Drinker next to it, and the Henry S. Drinker adjoining the latter, it would appear, from all the testimony in the cause, that the Henry S. Drinker would cover the land in dispute, if you run it out its full official distance. This, as we say, is on the supposition that these Drinker surveys were run out their official distances, and that there were no cross or interior lines run on the ground by the surveyor who made or returned them. For where the lines of a survey are run and marked on the ground, they constitute the true boundary of the tract, no matter what may be the calls in the warrant or draught of the survey as returned. If this old line of 1794, spoken of by the witnesses, as running through the Henry S. Drinker, was run or adopted as the boundary line of that tract, the plaintiff would be bound by it. He could not, in that case, go beyond it, but would be limited to that line, even if it did not give him the official distance called for in the survey. But to do this you must be satisfied that the surveyor who made and returned the surveys on these Drinker warrants ran this line, or at least adopted it after it was run, as their boundary. But the defendants contend that the plaintiff is not entitled to recover, even if the land in dispute is covered by the

Henry S. Drinker survey, and even if the plaintiff owns that tract of land, for the reason that a warrant was issued to Michael Concle, and a survey made of a prior date to that of the Henry S. Drinker, by which the land in dispute was covered; and that, consequently, the Concle being the older and better title, that of the Henry S. Drinker must give way, and then plaintiffs fail in this action.

"The defendants contend that they are entitled to hold, under the Concle title, to the line described as the old 1794 line; that it is one of the lines of their survey.

"To extend their boundary to this line, would give them a strip of land, some 18 or 20 rods wide, more than the distance called for in their official draught; but notwithstanding this may be so, if the surveyor who made the survey on the Concle warrant did actually run this line as one of its boundaries, or if, after it had been run, adopted it as one of its boundaries, the defendants would be entitled to go to it, although it might give to them a surplus of land.

"From what has been said, you will see the importance of ascertaining whether this 1794 line was made by the surveyor, or adopted by him, as a boundary of either the Drinker or Concle tracts; or whether it was run by the surveyor who located the Mary Morris and its sister surveys.

"You will remember the testimony of the surveyors on this point.

"Those who have spoken of this line, prove that they commenced at the maple corner between Robert Rainey and the Mary McLanahan. From this point they traced it along the Gratz surveys, of which it was the boundary, until they came to the lower end of the Mary Morris, the last of the Gratz surveys, and that it was then continued on in the same direction, through, what they say, was the Henry S. Drinker tract.

"This was also the case with the line on the other side of the Mary Morris. They are of the opinion that these lines were extended, past the Mary Morris, by the surveyor who located that warrant and its sister ones, and was not made for either the Drinker or Concle tracts. Mr. Wilson, however, who was called by the defendants, differs from them, and thinks this old line of 1794 is the proper line of the Michael Concle.

["If this line was made (as supposed by the witnesses on part of the plaintiff) by the surveyor who located the Mary Morris, and was then abandoned beyond the lines of that tract, it would not be the boundary line of either the Concle or Drinker surveys.

"We confess that the evidence, to our mind, was very convincing, and satisfied us that this was the correct theory as to how this line came to be run there.]

"If it has had the same effect on yours, then you could not

[Boynton v. Urian.]

adopt this line as the dividing line of these surveys. If then you should come to the conclusion that this was not the division line of these tracts, you will have to find some other as the correct one between them.

" This brings us to the consideration of the question as to which of these warrants and surveys will have to give way, if there is an interference or overlapping of lines.

" The witnesses have fixed how they would locate the Drinker warrants and surveys, as we have before explained. From the evidence it would appear as if the Michael Concle was to be located from the white-pine of the Depui corner, or adjoining the Steinhison tract on the west, and from thence running it out its official distance, it would interfere with the Henry S. Drinker, if it was located according to its official courses and distances. The witnesses make the interference a strip of 53 rods wide. That is if the Concle ran to the old 1794 line. To run the Concle to the Wilson line, the interference would be about 33 or 34 perches wide. By abandoning the old 1794 line, if you should do so, the interference would be this latter amount. *Then which warrant must give way as to this amount? We see that the Concle warrant is the elder, and the survey made on it is some seven or eight days before that made on the Henry S. Drinker. The general rule of law is, that the younger must give way or yield to the elder; and we do not see anything in this case to take it out of that rule.* This being so, it becomes manifest that if you abandon the old 1794 line, as the division between these two surveys, you would have to commence at the line of the Steinhison and measure off the official distance of the Concle, to wit, 230 rods, and at the end of that line, to wit, 230 rods from the Steinhison, or White Pine Depui corner, would be the corner of the division line of the Michael Concle and Henry S. Drinker. The plaintiff would be entitled to a verdict for all the land beyond the division line thus run, and the defendant would hold all within it.

[" The question, then, is, where does this distance carry the Concle tract to? The surveyors who have been examined, and who have measured this line, make it from the white-pine of the Depui and Steinhison tracts to the old line of 1794, from 248 to 252 rods long. If you are satisfied that this is correct, then by running off the 230 rods, it would leave from 18 to 22 rods wide of this disputed land to be given to the plaintiff, and the balance would be held by the defendants.] The questions then submitted to you, are first, was the old 1794 line made as the division line of the Concle and Drinker surveys, or was it the boundary of either the Michael Concle or Henry S. Drinker? If it was, then the defendants would be entitled to go to it, and would hold all the land really in dispute, and plaintiff would be entitled only to

[Boynton *v.* Urian.]

what lay beyond it. [But if you shall be of the opinion, from the evidence, that this is not the correct dividing line, then where is it? If it is not, then commence at the Depui corner and run out the full official distance, 230 perches, and if it does not reach the old 1794 line, the plaintiff is entitled to the difference, and would be entitled to your verdict for all the land lying beyond a line run at the end of 230 rods from the Depui and Steinhison corner."]

The jury returned this verdict :—

"We find for the plaintiff all of the land described in the plaintiff's writ, lying east of the heavy black line above shown, which is to be run by commencing at the White Pine and stones of Samuel Depui and measuring east 230 rods, ground measure, and then running said black line south to the south end of M. Concle and Henry S. Drinker, with 1 cent damage."

[Boynton v. Urian.]

Each party took a writ of error.

The plaintiff below assigned for error the answer to his point, and the part of the charge in italics.

The defendant below assigned for error the answer to his point, and those parts of the charge included in brackets.

*J. B. McEnally*, for defendant below (plaintiff in error), cited Elements of Plane and Spherical Trigonometry, by Elias Loomis, 14th ed. p. 91; Wenrich & Co. *v.* Heffner, 2 Wright 207; Strohl *v.* Levan, 3 Id. 184; Wilt *v.* Snyder, 5 Harris 77; Graham *v.* Smith, 1 Casey 323; Carbon Run Improvement Co. *v.* Rockafeller, 1 Casey 55.

*W. A. Wallace*, for plaintiff below (defendant in error), cited Sailor *v.* Hertzog, 10 Barr 319; Schoneman *v.* Fegley, 2 Harris 379; Oswald *v.* Kennedy, 12 Wright 12; Cox *v.* Couch, 8 Barr 154; Adams *v.* Jackson, 4 W. & S. 56.

The opinion of the court was delivered, May 13th 1867, by

THOMPSON, J.—These are cross writs of error to the same judgment, and involve questions of boundary and seniority of location.

The plaintiff below owned a tract of land, for which a warrant was issued on the 24th of February 1794, and which was surveyed the 28th of October following, returned to the land office on the 24th of February 1795, and patented in April following. One of the boundaries claimed for the tract by the plaintiff below was disputed by the defendants, now plaintiffs in error, as interfering with their tract, which was surveyed on the 21st of October 1794, on a warrant dated 21st of January 1794, returned the 29th of April 1795, and patented the 6th of November 1804. The latter was, therefore, the oldest in location by eight days; while the former was first returned and patented, and became the leading warrant in the office as to the latter, by calling for the former in the patent.

There was a block of Drinker warrants surveyed on the same day, of which the plaintiff's was one. In ascertaining the location of either of them now, it is necessary to begin with the first or leading warrant, and fixing that by its corners or boundary lines, the rest would be located by the first in consecutive order, the second bounding on the first, with its proper courses and distances, unless excluded by an actual line on the ground, which was not pretended; and the third adjoining on the second, with its proper courses and distances, would locate the tracts respectively.

Nothing could prevent the last of the *lines* from its distance but a line on the ground, for its boundary, or as the boundary of

[Boynton *v.* Urian.]

another and prior warrant.   In either case it could go no further. In the case in hand, if the plaintiff's western boundary was not marked on the ground, it could be fixed by its distance, measuring and calculating from the corner of the leading warrant of the block.   But suppose the defendant's eastern boundary was in the same situation, and this the jury must have found; even if the oldest survey, it would take only its distance, and no more. Courses and distances make the survey, where lines on the ground are not to be found, except in case of calls for adjoiners.

The defendant's theory was, that his eastern boundary was run upon the ground.   But this was negatived by the jury, and the line of 1794 insisted on was decided to be the boundary between the two competing tracts by the jury; they determined the location of the tracts by the courses and distances; in other words, gave the defendant his distance and the plaintiffs the balance, which was included in his proper distance.   So far all depended on the facts, and the law applicable to the questions of fact was properly laid down by the learned judge, as to questions of location.

But the plaintiffs in error, in the first of the above-named cases, complain of his charge on the question of practical mensuration; we think, however, without good reason.   Surface measurement is the only kind in practice by the district surveyors of this state. But in making that, it is usual for the surveyor in chaining over an uneven surface to make allowance by elevating the chain.

There was nothing to show that this was not the practice when the original survey was executed; whatever it was, would regulate the measurement now; and we see no error, therefore, in the answer of the learned judge to the defendant's point, that they were entitled to the measurement adopted by the surveyor who located the warrants.   In other words, to the ordinary measurement of official surveyors.   After a careful examination of the errors assigned, we see nothing in the first of the cases that needs to be corrected, and the                     Judgment is affirmed.

As to the second writ, we have but little to say.   The defendant in error in the other case brings this writ.   It would not benefit him, as we can see, to disaffirm the opinion of the judge on the points whereon he assigns error.

Nor would it be doing him much service to reverse his own judgment on the ground of his complaint; for on another trial we do not perceive that he could gain anything more than he has gained already.   He has obtained a verdict, and judgment for all the land he claimed.   If, therefore, there was error in the particular referred to, which we do not decide, it did the plaintiff no harm, and for harmless error we never reverse.

Judgment affirmed.