## I. X. GRIER ET AL. v. PENNA. COAL CO.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA
COUNTY.

Argued February 26, 1889—Decided October 7, 1889.

[To be reported.]

1. When three original corners of a rectangular survey are found on the ground connected by two well marked original lines, the remaining lines, in the absence of marks on the ground or calls for adjoiners to control them, are to be run in accordance with the official return of survey.

2. Monuments of a survey are marks made or adopted by the surveyor as evidence of the lines run by him. A call for an older survey as an adjoiner on the east does not make the northwest corner of the older, which is not called for in the return of the younger nor marked on the ground, a corner of the younger or a monument of its lines.

(*a*) Disputed land, claimed in ejectment, was alleged to lie along and within the north line of the Branham survey, which was one of a block of surveys made in May, 1794. Of this block the northeastern survey was the Singer survey.

(*b*) The Branham survey had upon the ground two well marked lines, the south and west, and three well marked corners, the southeast, the southwest, and the northwest; but its north line and east line were not marked upon the ground.

(*c*) The Singer survey called for the Chapman survey to the east, made in 1793; but neither the east line nor the north line of the Singer, nor the west line nor the north line of the Chapman had been run on the ground, although the northwest corner of the Chapman was ascertainable by other marked lines of its survey.

3. In such case, the north line of the Branham was to be established, not by a line run from its northwest corner to the northwest corner of the Chapman, but by a line run from its northwest corner according to its own official course and distance.

4. An instruction, that after the lapse of twenty-one years the lines of a survey are conclusively presumed to have been run as they are returned, whether marks of the survey are found on the ground or not, is not error when accompanied by the further instruction that marks on the ground control the lines as returned.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 388 January Term 1888, Sup. Ct.; court below, No 438 October Term 1884, C. P.

Charge of Court below.

On August 11, 1884, Isaac X. Grier and Mary P. Davis, widow and sole devisee of W. H. Davis, deceased, brought ejectment against the Pennsylvania Coal Company, to recover a tract of land situate in the boroughs of Dunmore, Dixon and Olyphant.    Issue.

The facts disclosed at the trial on December 10, 1886, will best appear from the charge to the jury, MAYER, P. J., 25th district, and the accompanying map:

The plaintiffs, Isaac X. Grier and Mary P. Davis, widow and devisee of William H. Davis, are the owners of the two tracts of land situate in the boroughs of Dunmore, Dixon and Olyphant, in this county, surveyed in pursuance of warrants dated February 3, 1794, granted by the commonwealth to Christiana Branham and Lewis Farmer, each of these tracts containing, according to the official return of survey, 439 acres and allowance.    On August 11, 1884, they brought this action of ejectment against the Pennsylvania Coal Company, defendant, to recover possession of 193 acres and 78 perches, which the plaintiffs claim are a part of the Christiana Branham and the Lewis Farmer surveys.

The defendant is the owner of two tracts of land lying immediately north of the Christiana Branham and Lewis Farmer tracts, surveyed in pursuance of warrants dated May 2, 1794, granted by the commonwealth to Benjamin R. Morgan and Robert Waln, each of these tracts containing, according to the official returns of the survey, 403 acres and 48 perches and allowance.    The defendant denies that it is in possession of any portion of the land covered by the Christiana Branham and Lewis Farmer surveys, but alleges and claims that the land for which this ejectment was brought is part of its two tracts of land, the Benjamin R. Morgan and the Robert Waln.

The controversy in this case grows out of the true location of the northern line of the Christiana Branham and Lewis Farmer surveys, and it is a question of fact to be determined by the jury, under the direction of the court.    If the northern line of the Christiana Branham and Lewis Farmer surveys is the true location of that line, as claimed by the plaintiffs, namely, by a line running south 44 degrees west from the post corner of the James Chapman survey, as established by the

Charge of Court below.

surveyors called on the part of the plaintiffs, then the land in dispute would be part of the Christiana Branham and Lewis Farmer surveys, and the plaintiffs would be entitled to your verdict. On the other hand, if the northern line of the Branham and Farmer surveys is to be ascertained, as claimed by the defendant, by a line running north 44 degrees east, from the stones by the maple sprouts, which the defendant claims is the chestnut oak corner of the Christiana Branham tract, then the land in controversy would not be included in the Branham and Farmer surveys, and your verdict should be for the defendant.

It is claimed by the plaintiffs that the Christiana Branham and Lewis Farmer surveys are part of a block of surveys known as the Ebenezer Branham block. It appears by the certified papers from the land office, that on February 3, 1794, application was made for twenty tracts of land, in the warrantee names of Ebenezer Branham and others; warrants were issued, and between the 1st and 12th of May, 1794, the deputy surveyor was upon the ground locating these warrants. The leading warrant, Ebenezer Branham, is described as beginning southwest about two hundred perches from a small chestnut oak and westerly corner of land surveyed to Samuel Clark, which was a warrant of April 3, 1792, and surveyed in August, 1792, and was an older survey, and located upon the ground prior to the time this application was filed for Ebenezer Branham. Following the leading warrant, the Ebenezer Branham application calls to commence 200 perches from the chestnut oak corner and westerly corner of this Samuel Clark survey, and adjoining lands claimed by James Chapman in the county of Luzerne. Then the application calls for the other warrants to adjoin each other, and it appears from the manner in which the surveys of these warrants were made on the ground that they adjoin each other in the order of description which is set out in the application. We are of the opinion, and so instruct the jury, that the Ebenezer Branham application for the twenty tracts upon which these warrants were issued and surveys made, as shown in this case, constitute a block of surveys, and must be located upon the ground as a block, and the Christiana Branham and Lewis Farmer surveys being part of this block, must be located with reference to their position in the block.

Charge of Court below.

Before going to the question of location, the evidence bearing upon it and the rules of law which are to guide the jury in determining the question, we will explain to the jury in what manner at an early day large bodies of land were disposed of by the commonwealth in blocks of surveys.

\*     \*     \*     \*     \*     \*     \*     \*

To avoid the difficulty resulting from having granted to one person, more than one tract of four hundred and forty acres, by the use of imaginary warrantee names, the court treated the person who paid the purchase money and the surveyor's fees as the real owner, which became a rule of law and a rule of property.  [And while the law required the deputy surveyor, in locating a survey, to go upon the ground and run and mark the lines, which was not done in many cases, the court adopted the rule of law and as a rule of property, that after a survey or a block of surveys had been returned and accepted, and remained in the land office twenty-one years, it was conclusively presumed that it was actually run upon the ground as returned, whether marks were found on the ground or not, and whether there was evidence that the surveyor had been on the ground or not.] [11]   And the survey can be located by its calls, in the absence of marks on the ground to establish its location.   The same rule applies to blocks of surveys.   After twenty-one years, they are to be and are presumed, as run upon the ground, to be located by their calls, or from some fixed starting point where such can be ascertained and determined; it being the law, however, both with regard to individual surveys and blocks of surveys, that the lines and marks made by the surveyor on the ground, and found, are to be treated as the true survey.   Where there is an absence of marks to fix the location of a tract or block of surveys, by applying the rule above stated a survey might be located by attaching it to a starting point, from a survey for which it calls, and which if found on the ground has marks of its own, or from one lying even beyond that, and found by its marks and monuments.   They may be fixed and attached together by some fixed calls that can be found on the ground, and in this way can be legally and properly located.

We come then, gentlemen, to the question of location.   Do the Christiana Branham and the Lewis Farmer surveys, as

located on the ground, cover any land in the possession of the defendant when this suit was brought, and the writ of ejectment served?

In determining the location of these two surveys, the jury are to be guided by certain well-established rules of law governing the location of surveys. First, the lines and corners made upon the ground by the surveyor who located the tract or block, constitute the survey and are the best evidence of location. In the absence of marks found upon the ground, the next best evidence is the call for adjoining surveys. When there are no marks found upon the ground, and there is no call for adjoiners, then the courses and distances as returned into the land office must determine the location. And in determining the question of location, streams of water may or may not furnish important evidence of location, according to circumstances, which we will hereafter more fully explain.

Where tracts of land are surveyed as a block, such surveys are to be located as a block or one entire tract; and that whether their lines can be found upon the ground, or they were chamber surveys. [If lines and corners can be found upon the ground, which were made for a block of surveys, this will determine the location of the block, even though it may result in disregarding or ignoring the calls for adjoiners or natural monuments.][8] And this is so, for the reason already stated, that the marks found on the ground are the highest and best evidence of location. And where lines and corners are found upon any part of a block of surveys, they belong to each and every tract of the block, and can be used and resorted to in fixing the location of the block. [Where a younger block of surveys calls for an older and no lines and corners can be found, made for the younger, the proper mode of determining the location of the younger is to ascertain the location of the older, and then locate the younger adjoining it, according to its calls. But if the lines and corners of the younger block can be found upon the ground, these must control and determine the location of such younger block, even if by such location you disregard altogether the call for an older block.][9] Where there is a conflict between the lines run and marked upon the ground, and a call for an older and adjoining survey, the lines must prevail over the call and fix the location.

\*     \*     \*     \*     \*     \*     \*     \*

Charge of Court below.

Now, what is the evidence bearing upon the question of location of the Christiana Branham and the Lewis Farmer surveys, which is the main question in this suit? The Christiana Branham and Lewis Farmer tracts being part of the Ebenezer Branham block, must be located with reference to the location of that block. These twenty tracts having been surveyed and returned as a block, must be located upon the ground as a block. No one of the tracts in that block can be arbitrarily located, irrespective of the lines and corners found upon the other parts of the block. All the lines and corners marked upon the ground and returned and found, must be considered in ascertaining the proper location of the Branham block. If sufficient lines and corners can be found upon this block, they will fix the location of the whole block without regard to the calls for adjoiners, if such calls conflict with the lines actually run on the ground, and returned by the surveyor who ˙ made the location of this block.

Now, gentlemen of the jury, as has been already stated to you, the controversy in this case grows out of the true location of the Christiana Branham and the Lewis Farmer surveys ; they are part of what is known as the Ebenezer Branham block. This is the Ebenezer Branham block. [The court now using the map.] It appears from the returns that the surveys of this block were not made on the ground, commencing at the leading warrant, but that they adjoin each other in the order in which they are set forth in the application. . . . . . It appears that on the eastern side of Ebenezer Branham block is another block known as the Chapman block, or Mason block. This block was surveyed in 1793, between the 15th and 21st of May, 1793, in pursuance of warrants which were granted on January 5, 1793. I do not think there is any controversy in regard to the location of the Chapman or Mason block. The base line is well established along another block or batch of surveys, for which warrants were granted on April 3, 1792, and surveyed between August and September, 1792. This is a well established base line running all around this block. From here none of the surveyors found any original work on the ground, but they ran the official courses and distances to this line.

S   Scale 225   J G R

N

Benj. R. Morgan S. Oct. 14. 1794.

Henry Branham S. May 5. 1794

Christiana Bronham. S May 12. 1794.

N. 44. E.   Land in dispute

Robert Waln S. Oct. 15. 1794

William Rawle S. Oct. 14. 1794

Sarah Dana. S. Oct. 18, 1793

Elenor Harriet S. May 12. 1794

Robert Irwin S May 8. 1794

Lewis Farmer. S. May 6. 1794

Joseph Thomas S. May 7. 1794

Robert Lewis. S May 8. 1794

David Lewis. S. May 3. 1794

Jacob Steinheiser S. May 1. 1794

Elizabeth Farmer. S May 5. 1794.

John Morton S. May 12. 1794

David Morton S. May 7. 1794

John Singer S. May 5. 1794

Abraham Singer

Elizabeth Singer. S. May 9, 1794

James Chapman S. May 15. 1793

Tho. Camarron 8 May 21. 1793:

Jos. Burr. S. May 21. 1793.

Ebenezer Branham. B. Mason.

Charge of Court below.

This is the base line we have spoken of along this block or batch of April 3, 1792, and it is on this base line that the surveyors called on the part of the defendant locate the Chapman or Benjamin Mason block of surveys. They find this line out to this point of the David Ridgway, and I don't remember that any of the surveyors found any original work on this line, but they ran the official courses and distances to this point. They ran a line from here south 44.5 degrees west, when they came out to what the plaintiffs claim is the northeast corner of the Elizabeth Singer, and which would be the northwest corner of the James Chapman ; they claim that this is a common corner between the Elizabeth Singer and the James Chapman. All the surveyors concur in testifying that this line is well established. By commencing here at the post by the maple, Mr. Trescott and some other surveyors, called on the part of the plaintiffs, found a corner at this point, although the surveyors called on the part of the defendant did not find any corner for the Benjamin Mason, which would be a northwest corner. Beyond this point the surveyors called both by the plaintiffs and by the defendant found line trees on this line. And also at this point, some 20 rods beyond, a line tree was found by a number of surveyors called on the part of the plaintiffs, and I think also some on the part of the defendant. They continued on that line, and they came to where they fixed the northwest corner of the Thomas Connarow, which is one of the tracts of the Chapman block. They ran down from that corner 50 perches, I believe it is so on the official return ; and ran out 127 rods, the official course and distance, and from there 230 rods to this point, which they fix as the northwest corner of the James Chapman survey, for which the Branham block calls to adjoin. I think, by the testimony, and give it as my opinion, that this Chapman block of surveys is well established, and I do not think there is any serious controversy between the plaintiffs and the defendant in regard to the location of the Chapman block, although there are some slight discrepancies in the testimony on the part of the surveyors called by the plaintiffs and the defendant. As to the distance, I think the surveyors make some slight difference on the part of the plaintiffs and the defendant, on the northern line. I think the surveyors on the part of the defendant run this a little further south than the surveyors called on the part of the plaintiffs.

Charge of Court below.

Then, gentlemen of the jury, this is the point at which the plaintiffs claim they are entitled to run the official courses and distances until they intersect the line running from the southwest corner of the Christiana Branham. They run up here some 262 and some tenths rods, until it intersects a line, which runs from what they claim to be the northwest corner of the James Chapman; then they continue on until they intersect a line running from the southwest corner of the Christiana Branham, as they establish it on the ground by the testimony of their surveyors, and they claim that it fixes the northwest corner of the Christiana Branham, as they locate it. Now, gentlemen of the jury, if this is the true location of this northern line, the land in controversy would be covered by the Christiana Branham and the Lewis Farmer surveys, and the defendant would be in possession of so much of the Christiana Branham and the Lewis Farmer surveys as would be embraced between what they claim is the stones by the maple sprouts, and a line running north fifty-six rods and some tenths to intersect a line running west from the northwest corner of the James Chapman survey as plaintiffs locate it on the ground. This is the theory of location as claimed by the plaintiffs.

On the other hand, the defendant alleges and claims that the true location of the Christiana Branham survey is fifty-six rods and some tenths south of this line. The defendant claims that the true location of this Christiana Branham is at the point designated on their map as the post by the maple sprouts, where they claim that the chestnut oak corner stood in 1794, when this block of surveys was located. It appears by the return of survey that Anthony Caruthers was the surveyor who located all these blocks. He then located the Benjamin Mason block, and also located these tracts of land on the north; he located the Ebenezer Branham block, and also the tracts claimed by the defendant, the Benjamin R. Morgan and the Robert Waln. The Robert Waln was a warrant dated May 2, 1794, and surveyed on October 14, 1794, and the Benjamin Morgan was surveyed on October 15, 1794, which would be subsequent in point of time to the survey of the Christiana Branham and the Lewis Farmer, as those were surveyed in May, I think. The Christiana Branham was surveyed on May 12, 1794, and the Lewis Farmer on May 6, 1794.

Charge of Court below.

In ascertaining the location of this Ebenezer Branham block, there does not seem to be much controversy between the surveyors on the one side and on the other, except in regard to this northwest corner. This is what is called the backbone line, and is well established, the line running south 44 degrees west from the Steinheiser pine. This line seems to be well established; there are original trees found upon this line counting to the date of the survey, until you get to the southeast corner of the Eleanor Harriott. On this line none of the surveyors found any original work through the Eleanor Harriott, but in going up the eastern line of the Eleanor Harriott they found original work, until they came to the southeast corner of the Christiana Branham. Along the southern line of the Christiana Branham they find original work, and also along the western line of the Christiana Branham, across this stream of water ; I think the surveyors found two trees on the other side of this stream, one was a chestnut and another a pitch pine, and I think one of the surveyors produced a block. I think Mr. West, that is my recollection of it, produced a block out of this pitch pine. The defendant claims that at that point a chestnut oak stood in 1794, which was made as the corner of the Christiana Branham, and witnesses have been called on the part of the defendant, who testified that there was a chestnut oak tree where these stones and maple sprouts stood, being the stones and maple sprouts which have been testified to by all the witnesses, both on the part of the plaintiffs and the defendant, and the defendant claims that at that point there was a chestnut stump, and that this is the corner to which the Christiana Branham tract should be located, and it would not be entitled to go some fifty-six rods and some tenths further north, and connect with the line of the plaintiffs running south 44 degrees west from the northwest corner of the James Chapman survey.

*     *     *     *     *     *     *     *

Now, gentlemen of the jury, we have given to you the different theories of location as claimed on the part of the plaintiffs and on the part of the defendant, and you should consider all the evidence in the case, and determine fairly and impartially what is the true location of this Ebenezer Branham block. Where did Anthony Caruthers locate this block in 1794?

Wherever he located that block, there that block must be upon the ground. And if the location of this block is as claimed by the plaintiffs, by a line running south 44 degrees west from the corner of the James Chapman, as plaintiffs claim it is established on the ground, until it intersects a line connecting and running up the western line of the Christiana Branham 56 rods beyond where the defendant claims the corner of this block is, then it would give this land in controversy here to the plaintiffs. [If, however, the true location is as claimed by the defendant, at the chestnut oak corner, then the mode of determining that northern line would be by running north 44 degrees east from this chestnut oak corner to the northwest corner of the Elizabeth Singer tract. And the court does not agree with the counsel for the plaintiffs that the jury can, if they believe that that chestnut oak corner is the northwest corner of the Christiana Branham, that the northern line of this block of surveys can be run by a line running from the chestnut oak corner to the northwest corner of the James Chapman, because if the jury should find that this is the corner, at the chestnut oak of that block, the northern line must be located from it, and would determine the extent of this block of surveys on the north, because being a mark upon the ground, it must fix the location, and this call for the Chapman must be disregarded in fixing the location for that block. That seems to us to be in accordance with the well settled principles of law, that where there is a conflict between a call and a corner on the ground, that the monument on the ground must determine its location, although the result would be to disregard the calls for adjoining surveys.] [1]

Now, gentlemen of the jury, you will take this case, consider all the evidence, and determine what is the true location of this Ebenezer Branham block. If the true location of it is, as claimed by the plaintiffs, by a line running from the James Chapman northwest corner until it intersects the line 262 rods north of the southwest corner of the Christiana Branham, then the plaintiffs are entitled to the land in controversy in this suit, and your verdict should be for the plaintiffs. [If, however, you come to the conclusion that this chestnut oak corner, as claimed by the defendant, is the true northwest corner of the Christiana Branham tract, then this block must be located

Charge of Court below.

by the line running north 44 degrees east to the northeast corner of the Elizabeth Singer, and your verdict should be for the defendant.] [2]

\*    \*    \*    \*    \*    \*    \*    \*

We have been requested by counsel for the plaintiffs to charge you upon the following points [inter alia] :

5. Under all the evidence in the case, the northwest of the James Chapman must be taken as the northeast corner of the Elizabeth Singer.

Answer : We decline to affirm this point, for the reason that it would withdraw from the consideration of the jury the evidence bearing upon the question of location.[5]

6. If the jury find that the northwest corner of the Christiana Branham to be where the plaintiffs claim it, then your verdict must be for the plaintiffs for all the land described in the writ.

Answer : We answer this point in the affirmative.

7. That if the jury find from the evidence that the northwest corner of the Christiana Branham warrant is at the stones and maple sprouts claimed by the defendant, then the correct north line of the Branham block would be a straight line between that point and the northwest corner of the James Chapman, and the plaintiffs are entitled to recover that portion of the land described in the writ included within that line.

Answer : This point is refused.[3]

The defendant's counsel have requested the court to charge [inter alia] :

1. The plaintiffs having shown, and it being undisputed, that the southern and western lines of the Christiana Branham were run and marked upon the ground originally, and its southeast and southwest corners established as returned into the land office, and this survey having remained unquestioned for nearly ninety years, under the evidence in this case, its location is established as returned into the land office, and the northern line should be located by running a line from a point at the end of the official distance measured from the southwest corner of the Christiana Branham, along its original marked line 207 perches, and from that point the official course of the northern line of the Christiana Branham, with proper variation to intersect the western line of the Lewis Farmer, unless there are original monuments on the ground which control the location

of the northeast corner of the said Branham survey, in which case the western line should be located from such monument eastward by the official course with proper variation.

Answer: Well gentlemen, there are two propositions contained in that point, and the court hardly knows how to answer it. We will answer it in this way: That if the jury should come to the conclusion that there are no original monuments found upon the ground upon the northwest corner of the Christiana Branham survey, then the proper location of the northern line of that block would be by running from the northwest corner of the James Chapman to intersect the line running 56 rods north of where the chestnut oak is claimed by the defendant. But if the jury should come to the conclusion that the chestnut oak corner is an original monument, and was made for the northwest corner of the Christiana Branham tracts, then the proper mode to locate it would be by a line running north 44 degrees east from this chestnut oak corner.[6]

7. If the lines and corners of the Christiana Branham, Lewis Farmer and others of the block can be found on the ground, those must control the location of the block, even.if in so doing you have to disregard entirely calls for older tracts or blocks. Whenever there is a discrepancy between the lines run and marked upon the ground and the calls for older surveys, and natural monuments, the calls must give way and the lines and courses themselves must govern the location. This rule is equally applicable to individual surveys and to blocks of surveys.

Answer: This point is affirmed.[7]

11. That if the jury believe the testimony of W. H. Sturdevant, A. B. Cochran, S. J. Pealer, W. A. Mason, J. H. Rittenhouse, G. G. Shafer, reputable surveyors, who testified that the northwest corner of the Christiana Branham was at the point where the remains of the chestnut oak were discovered, 207 perches from the southwest corner of the Christiana Branham, and the testimony of Edward Dolph, Edward Griffin, Perry Dolph and Crandall Thompson, that this corner, fixed by the surveyors was the original corner of the Christiana Branham, it will establish the northwest corner of the Christiana Branham at this point, and the northern line of the Christiana Branham and the Lewis Farmer should be run in an easterly direction

by the course of the original survey with proper variation, which would exclude the land in dispute from the Christiana Branham and the Lewis Farmer, and the verdict should be for the defendant.

Answer: This is affirmed; we have substantially so instructed the jury in our general charge.[4]

Now, gentlemen, we have discharged what we believe to be our duty in this case, and it will be for you to discharge your duty, and return a fair and impartial verdict under the evidence.

The jury returned a verdict for the defendant. A rule for a new trial having been discharged, the plaintiffs took this writ, assigning as error:

1, 2. The portions of the charge in [ ][1] [2]

3. The answer to plaintiffs' seventh point.[3]

4. The answer to defendant's eleventh point.[4]

5. The answer to plaintiffs' fifth point.[5]

6, 7. The answers to defendant's first and seventh points.[6] [7]

8–11. The portions of the charge in [ ][8 to 11]

*Mr. W. H. Jessup* and *Mr. Samuel Linn* (with them *Mr. J. V. Darling*), for the plaintiffs in error.

Counsel cited: 1. Upon the force of calls for older surveys: Brolaskey v. McClain, 61 Pa. 146, 163; Covert v. Irwin, 3 S. & R. 283, 288; Malone v. Sallada, 48 Pa. 419, 425; Henry v. Henry, 5 Pa. 247–9; Packer v. Schrader M. & M. Co., 97 Pa. 383; Wagner v. Wagner, 68 Pa. 392, 395; Pruner v. Brisbin, 98 Pa. 202; Eister v. Paul, 54 Pa. 196; Sweigart v. Richards, 8 Pa. 436; Bellas v. Cleaver, 40 Pa. 268; Salmon Creek L. & M. Co. v. Dusenbury, 110 Pa. 446, 452; Younkin v. Cowan, 34 Pa. 198. 2. Upon the first, second, third and fourth assignments: Wharton v. Garvin, 34 Pa. 342; Watson v. Jones, 85 Pa. 117; Parks v. Boynton, 98 Pa. 370; Quinn v. Heart, 43 Pa. 341; Malone v. Sallada, 48 Pa. 419, 425; Henry v. Henry, 5 Pa. 247, 249; Schnable v. Doughty, 3 Pa. 392, 399; Collins v. Barclay, 7 Pa. 67, 73; Covert v. Irwin, 3 S. & R. 283, 288. 3. Upon the seventh, eighth and ninth assignments: Salmon Creek L. & M. Co. v. Dusenbury, 110 Pa. 446.

*Mr. Alexander Farnham* and *Mr. S. P. Wolverton* (with them *Mr. A. H. McClintock* and *Messrs. Willard* and *Warren*), for the defendant in error.

Counsel cited: Kennedy v. Lubold, 88 Pa. 256; Sweigart v. Richards, 8 Pa. 436; Clement v. Coal Co., 87 Pa. 291; Clement v. Packer, 125 U. S. 309; Hagerty v. Mathers, 31 Pa. 355; Darrah v. Bryant, 56 Pa. 69; Mathers v. Hegarty, 37 Pa. 64; Boynton v. Urian, 55 Pa. 151; Fritz v. Brandon, 78 Pa. 351; Malone v. Sallada, 48 Pa. 419; Pruner v. Brisbin, 98 Pa. 202; Eister v. Paul, 54 Pa. 198; Sugar Valley Lumb. Co. v. Barber, 87 Pa. 313; Salmon Creek L. & M. Co. v. Dusenbury, 110 Pa. 446.

OPINION, MR. JUSTICE WILLIAMS:

There are three blocks of surveys whose lines are involved in this controversy. The first on the ground is the Chapman block, which was surveyed by the deputy surveyor in May, 1793. The next is the Branham block, in which the plaintiffs' tracts lie, which was surveyed in May, 1794. The third and youngest is the block of which defendant's tracts are a part, which was surveyed in October 1794.

There is no dispute over the general location of either of these blocks, but the controversy relates to the north line of the Branham, which is the boundary between the two blocks of 1794. The plaintiffs own the Christiana Branham survey, at the northwest corner of the Branham block, and the Lewis Farmer lying next east of it. The defendant owns the Morgan and the Waln surveys, lying directly north of the plaintiffs, in the southwest corner of the younger block. There is no original boundary line between them on the ground, and the object of this litigation is to establish one.

The theory upon which the action was brought was, that the north line of the Branham block must be ascertained by running a line westwardly from the northwest corner of the James Chapman, upon the course called for by the returns of survey, to the west side of the block. This would add about fifty-seven rods to the length of all the warrants in the northern tier of the Branham block, over that shown on the official surveys, and reduce to the same extent the length of the warrants lying north of it. The defendant alleged that the line should

be run from the northwest corner of the Christiana Branham, eastwardly upon the course called for, to the west line of the James Chapman; and it alleged, and the jury have found, that the northwest corner of the Branham was an original corner marked upon the ground in 1794, as returned by the deputy surveyor. This line is about fifty-seven rods south of that claimed by the plaintiffs. The land in controversy lies between these lines along the north side of the Branham and the Farmer tracts.

On the trial, the plaintiffs proposed that in the event of the jury finding the northwest corner of the Christiana Branham to be as contended for by the defendant, the boundary line should be run diagonally from the northwest corner of the Chapman to the place of the Chestnut oak at the northwest corner of the Branham.

It will thus be seen that the rights of the parties depend wholly on the proper adjustment of the north line of the Branham tract, which is also the north line of the block in which it lies. How is this line to be run? In replying to this question, it should be borne in mind that the location of the Branham block is not controverted. On the other hand, it is well located by lines on the ground, the original character of which is not denied. Nor is the location of the Christiana Branham as the northwest member of the block controverted. It has an original south line, and west line. Its east and north lines are not on the ground. If, however, it has a northwest corner, that fixes the western end of the north line, and, unless controlled by monuments on the ground, the survey of the Christiana Branham can be readily closed by running east on the proper course to a point where the line would be intersected by a line running north from the southeast corner. The point of intersection would supply the northeast corner and complete the survey of the tract. This is in accordance with the well settled rule that resort is to be had first to the work of the surveyor, the marks on the ground; next, and in the absence of these, to calls for adjoiners; then, last, to the courses and distances of the survey as returned.

Assuming the northwest corner, which the jury has found to be at the place of the chestnut oak, we have two well marked lines, the south and west, and three established corners, for the

Christiana Branham.   From these the northeast corner may be
fixed with absolute accuracy, and is fixed, as matter of law,
unless some other monument of the original survey requires a
change in the direction of the north line from that returned by
the surveyor: Wharton v. Garvin, 34 Pa. 340.   But the plaint-
iffs allege the existence of a monument that should change the
direction of the north line from that given by the official draft,
and carry it in a diagonal course in the direction of the north-
west corner of the James Chapman, to which it is insisted the
north line of the Branham block should be extended.   The
argument in favor of this method rests on the fact that the
Elizabeth Singer tract, which is at the northeast corner of the
Branham block, calls for the James Chapman on the east.
This, it is urged, makes the Chapman a monument of the sur-
vey of the Singer, and, what is much more, makes the north-
west corner of the Chapman the northeast corner of the Singer,
and so the northeast corner of the Branham block.   This leads
us to consider, first, the meaning of the word monument, as ap-
plied to the survey of a tract of land; second, the difference
between a monument and a call; and third, whether the north-
west corner of the Chapman is a monument of the Singer sur-
vey or of the Branham block.

A survey is made to inclose a tract of land by a visible line.
If it do not wholly inclose the tract, it must furnish the data
from which the inclosure may be completed, or it is not a good
survey.   The same thing is true of a block of surveys.   If the
lines do not inclose the block, they must furnish such marks as
shall fix with certainty enough of its lines or corners to make
the inclosure practicable.   The marks of the survey that show
the presence of the surveyor on the lines, and what he did to fix
the place of the tract or block on the ground, are the monu-
ments of his work by which his footsteps may be followed in later
years.   These are ordinarily marks made by him on the trees
growing in or near the lines run and corners made.   If a black
oak is called for as a corner at a given point, and upon subse-
quent examination a black oak tree is found at the proper
place bearing the marks made by surveyors to indicate a corner,
and these marks are of the proper age, that tree with its marks
is a monument of the original survey and fixes the precise
location of the corner.   So, natural objects, such as the bank

of a stream, the shore of a lake, a precipice or ledge of rocks, a fountain or spring of water, may be adopted by the surveyor and returned so as to make them monuments fixing the location of lines and corners. They are of a permanent character, such as may be relied on to furnish evidence in subsequent years of the presence of the surveyor on the ground and of the lines and courses run and returned by him. But there were no monuments of any kind showing the presence of the surveyor on the north and west lines of the Chapman, for he had not been there. Those lines were not run. What should stop the Singer on that side and form its eastern boundary? The Chapman being an older survey and entitled to be first filled, is called for as the boundary. In the absence of actual lines on the ground, the prior right of the Chapman to its complement of land, in accordance with its lines as returned into the land office, limits the rights of the holder of the Singer. In other words, the Singer can go to the Chapman, but wherever the west line of the Chapman may be ascertained to be, there the Singer stops. There is a certain secondary sense in which the call for the Chapman may be said to make it a monument of the Singer, because being the senior tract it controls the eastern boundary of the Singer. The Singer cannot invade its lines, but must stop at its western boundary, when that is ascertained. But it is the tract as an adjoiner, not any work upon the ground on its west line, that stops the Singer. If in 1794 the deputy surveyor had actually run and marked the east line of the Singer, at a distance of one rod or any other distance west of where the west line of the Chapman is now run, the marked line would override the call and the Singer would stop where the monuments of the survey fixed the line. In the absence of marks, the call is operative and takes the Singer to the Chapman, without regard to the official distances.

We come now to our third inquiry, whether the northwest corner of the Chapman is a monument of the Singer or of the Branham block. In considering this question, we must keep in mind the following facts: (a) that neither the north nor the west lines of the Chapman, nor its northwest corner, had been marked upon the ground when the Singer tract was located; (b) that the east line of the Singer was not run by the deputy surveyor, and had no monuments, made or adopted, to

mark its site; (*c*) the return of survey of the Singer does not profess to adopt, or in any manner refer to, the northwest corner of the Chapman, either as its own northeast corner, or for any other purpose. The official draft of the Singer shows that the deputy surveyor returned it as adjoining the Joseph Bunn, the Thos. Conarrow and the James Chapman on the east, the Abraham Singer and the Jacob Steinheiser on the west, and the Ebenezer Branham on the south; but on the north, neither adjoiner, nor any work on the ground belonging to itself or any other tract is called for. Its north line is protracted westerly, as a dotted line, indicating that it is continuous with the north line of the Steinheiser and the Branham block, but there is nothing else to guide in fixing the location of the north line except the distances. The northwest corner of the Chapman is now fixed by the intersection of the north and west lines of the survey. This method of locating it is as satisfactory as though the surveyor had originally marked trees at the spot. It affords assurance of mathematical accuracy in its result. The corner thus established may be thereafter a monument, in an important sense, helping to fix the west line of the tract and thereby fixing the eastern limit of the Singer, but it has no other relation to that tract. Not having been adopted or called for by the Singer survey, its offices are confined to the lines whose intersection locates it, and the tract which it thus helps to inclose. We conclude therefore that the northwest corner of the Chapman is in no sense a monument of the Singer or Branham surveys, and that it is to be left out of consideration in ascertaining the north line of the Christiana Branham and the Lewis Farmer tracts on which this case depends. The true way, therefore, in which to complete the survey and inclose the Branham block was to start from the northwest corner of the Christiana Branham, and run easterly on the course called for by the return of survey.

Where was the northwest corner of the Branham? That question was submitted to the jury upon the evidence, and they have found the corner to be at the place of the maple sprouts, as the place where the original chestnut oak stood. Adopting this as the northwest corner, and the jury were rightly instructed that they should run the north line by following the courses called for in the return of survey. There were no

monuments made for the Branham surveys to disturb this mode of inclosure. There were no monuments made for any other survey adopted or referred to by the surveyor, so as to make them marks or monuments of the Branham surveys. There was no call for an adjoiner on the north, to carry the line to the work of older surveys in the absence of marks of its own. There being neither mark nor call to control the line, it was to be run according to its own courses and distances: Darrah v. Bryant, 56 Pa. 69; Boynton v. Urian, 55 Pa. 142; Wharton v. Garvin, 34 Pa. 340. Had the west line of the Chapman been marked on the ground, and its northwest corner returned as the northeast of the Singer, the plaintiffs' mode of running the north line of the Branham block in a diagonal course to the northwest corner of the Christiana Branham, would be entitled to consideration, but an adopted line or corner must be a real line or corner to become a monument of the lines of the adopting warrant: Glass v. Gilbert, 58 Pa. 267.

The eleventh assignment is more serious. The learned judge, presiding at the trial in the court below, instructed the jury "that after a survey or block of surveys had been returned and accepted and remained in the land office for twenty-one years, it was conclusively presumed that it was actually run upon the ground as returned, whether marks were found upon the ground or not, and whether there was evidence that the surveyor had been on the ground or not." If this stood alone we should think it possible that the jury had been misled by it into thinking that the presumption based upon the return of survey was better evidence than the work on the ground, and should be relied upon in fixing the lines and corners, notwithstanding the marks of an actual survey; but the jury were clearly and repeatedly told that the lines originally run on the ground constituted the true survey, and controlled the calls and the courses and distances returned by the surveyor. They were thus instructed that the lines on the ground controlled those on the return of survey, and were to be looked to, so far as they were found, as the highest and controlling proof for the purposes of location. Subject to this instruction, that complained of was unobjectionable. Presumptions are resorted to for the purpose of supplying the want of positive proof.

When positive proof is available there is no room for the presumption. The application of the doctrine of a presumption of an actual survey after the lapse of twenty-one years, was first suggested by DUNCAN, J., in Lambourn v. Hartswick, 13 S. & R. 113, but in that case part of the survey was actually on the ground, and the presumption was suggested as furnishing a basis for completing the survey. This suggestion was adopted by KENNEDY, J., in Nieman v. Ward, 1 W. & S. 68, and applied as a rule of law to the location of an improvement warrant which described the land applied for as being a large bottom lying on both sides of the Cockalamus creek above the claim of Jones. The warrantee and his vendees had been in possession for many years. Locating the warrant against Jones's claim, as an adjoiner called for, the presumption supplied, as against junior surveys, the remaining lines as returned by the deputy surveyor. In Collins v. Barclay, 7 Pa. 67, it was applied to a survey which was one of a block of fifty-two adjoining surveys, the block being well located as a whole by work on the ground. Its application in Ormsby v. Ihmsen, 34 Pa. 462, was to the north line of a survey whose other lines were not in controversy, and where the conflict was between a call, and the courses and distances. The courses and distances prevailed over the call by the aid of the presumption, and the case has been severely criticised and qualified in Packer v. Schrader M. & M. Co., 97 Pa. 379, and in Salmon Creek Lumber and Mining Co. v. Dusenbury, 110 Pa. 446. The rule is well stated by GORDON, J., in the latter case as follows: "For the purpose of quieting titles and settling disputes that must otherwise inevitably arise from chamber surveys, a presumption such as stated is raised in favor of their location on the ground. But that presumption goes no further, for they must have after all actual and not merely presumptive calls, so that their location can be certainly fixed, otherwise they are good for nothing." In the present case we have two original lines, the south and the west, well marked on the ground, for the Christiana Branham. We have also three original corners, the southeast, the southwest, and the northwest found by the jury. The inclosing lines, in the absence of marks or calls to take them away, are presumed to have been run as returned by the surveyor, although no trace of such lines can be found

on the ground. The north and east lines should therefore be run on the official courses to their intersection at the northeast corner, thus completing the inclosure. The survey is thus made by following the lines returned to the land office, where marks are not found, because of the conclusive presumption that a line not on the ground was nevertheless run as returned. The instructions of the judge in the court below were substantially in accordance with the rule as we understand it when fairly taken together. From an examination of the evidence we think the verdict was just, and fully justified by the facts before the jury.

Judgment affirmed.