392 A.2d 855

**Norman J. ROTH and Emma K. Roth, his wife, Appellants,**

**v.**

**Robert H. HALBERSTADT and Mary M. Halberstadt, his wife.**

Superior Court of Pennsylvania.

Submitted June 13, 1977.

Decided Oct. 20, 1978.

402

Gary Neil Asteak, Easton, for appellants.

Dominic J. Ferraro, Nazareth, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

■ The parties to this proceeding are adjoining landowners, and this appeal is from a final decree in equity. The action was commenced when the Roths filed a complaint in equity alleging that the Halberstadts constructed a fence that encroached on the Roths' property. The Halberstadts contended in their answer that the fence was located entirely on their property. After a hearing, the lower court dismissed the complaint, concluding that the Roths had failed to sustain their burden of proving the location of the common boundary. We affirm the lower court's disposition.

The properties involved lie in a general north-south direction with the center line of South Summit Road as the easterly boundary. The Roth property lies to the south and is roughly trapezoidal in shape with the base running approximately 760 feet along South Summit Road. The Halberstadt property is shaped like a parallelogram and fronts approximately 400 feet on South Summit Road.

The common line is described in the Roths' deed as follows: "thence along the land of the Grantor, of which this was a part, North seventy-two degrees twenty-eight minutes East (N 72° 28′ E) four hundred twelve and seventy-one one-hundredths (412.71′ ) feet *passing in a spring* to a bolt in the center of Township Road No. 592 . . . .." (Plaintiffs' exhibit 4; P.R. 149a) (emphasis added). The habendum clause provides in part: "*TOGETHER* with the right at all times to use the waters of the Spring located on the northeast portion of the land hereby granted, in common with the owners of the property immediately adjoining to

the north and the successors thereto." (Plaintiffs' exhibit 4; P.R. 149a).[1]

At the hearing, the Roths introduced a survey prepared by Kenneth R. Hahn after this dispute arose. The survey shows three bodies of water in proximity to the common boundary. Beginning at the westerly property line, the first water course is Monocacy Creek which flows in a southerly direction and intersects the common boundary. It is clear that this creek is not the spring referred to in the deed because it is located in the western half of the property. Neither party contended that this was the spring in question. The second body of water, called a "surface spring," is located, according to the survey, approximately 120 feet west of South Summit Road. This "spring" is a wide shallow pool of slowly moving water which flows into a drainage ditch. The drainage ditch runs in a westerly direction from the southern tip of the surface spring to Monocacy Creek. The third body of water is a spring which surfaces at what is termed a stone headwall. The water from this spring flows in a south westerly direction into a large pond in the center of the Roth property.

According to the plaintiffs' survey, the common boundary intersects the surface spring at the southern tip of the pool where the water flows into the drainage ditch. The drainage ditch runs parallel to, and approximately seven feet south of, the boundary. The stone headwall lies approximately seven feet south of the common boundary and approximately forty feet west of the center line of South Summit Road. The fence in question is approximately sixty feet long. It begins at the side of South Summit Road at a point allegedly on the Roths' property five feet south of the boundary. The fence crosses the common boundary at a point near the stone headwall, and the remaining twenty feet are clearly located on the Halberstadt property.

1. The description in the Halberstadt deed is identical except the angles are reversed. The habendum clause states that the spring is located in the southeast portion of the land and is to be used with the owners of the land adjoining to the south.

After the hearing, the lower court found, based on the uncontroverted testimony of the defendant, that the body of water termed the surface spring did not exist at the time of the subdivision but was formed in approximately 1970 when the Roths filled a swampy area on their property and diverted the flow of surface water.[2] The lower court concluded that the deeds referred to the spring flowing from the headwall. Applying the principle that monuments control over courses and distances, the court held that the fence did not encroach.

■ The primary function of a court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original subdivision. To achieve this result, our courts have employed certain rules of construction that are commonly thought to provide the best indication of that intent. As a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail. *Dallas Borough Annexation Case*, 169 Pa.Super. 129, 82 A.2d 676 (1951). Moreover, natural monuments normally take preference over artificial marks or monuments. *Dallas Borough Annexation Case, supra.* These rules, however, are not imperative but are merely aids in construction that must yield to a contrary showing. *Baker v. Roslyn Swim Club*, 206 Pa.Super. 192, 213 A.2d 145 (1965); *Walleigh v. Emery*, 193 Pa.Super. 53, 163 A.2d 665 (1960).

■ Appellants first argue that the spring referred to in the deeds is "an intermediate point, and [that] no clear intention is shown to make the call locative." The lower court found that there was a clear showing of the intent to make the spring a monument[3] based on the habendum

2. Appellants dispute this finding. Mr. Halberstadt, however, testified to the above facts (N.T. 90a–92a), and this testimony was never contradicted. Appellants' contention is without merit.

3. Monuments are visible marks or indications left on natural or other objects indicating the line of a survey. *Grier v. Pennsylvania Coal Co.*, 128 Pa. 79, 18 A. 480 (1889). "[N]atural objects, such as the bank of a stream, the shore of a lake, a precipice or ledge of rocks, *a*

clauses in both deeds which refer to the spring as being located on the boundary. We simply cannot conclude that the lower court abused its discretion in making the finding of fact. Assuming that the appellants' survey is accurate, a conflict exists between the pins located by course and distance on the survey and the spring.[4] Absent proof to the contrary, the monument controls the boundary.

■ Appellants next argue that the lower court found that the headwall marked the boundary and that this headwall was not adequately described in the deed. The lower court did find that the boundary line passes "through the spring at the stone headwall." The answer to this contention is that the spring rather than the headwall is the monument. Any reference to the headwall merely identifies the particular body of water. Although not clear from the brief, it appears that appellants are concerned that the boundary may ultimately be located at some point between the headwall and the pond. This is an unfounded worry because the call for the spring refers to the point at which the water surfaces rather than at some point along the stream of discharge. A spring is "an issue of water from the earth, or the basin of water at the place of its issue." Black's Law Dictionary 1574 (rev. 4th ed. 1968). The spring, as a fixed point, is the monument and any reference to the headwall merely assists in locating the spring.

■ Finally, appellants contend that the lower court's holding leads to an absurd result. They did not, however, explain the nature of the absurdity. It is true that the lower court did not determine the exact location of the common boundary; however, appellants never requested such a determination. The lower court simply held that the

*fountain or spring of water,* may be adopted . . . as . . . monuments fixing the location of lines and corners." *Grier, supra,* 128 Pa. at 95–96, 18 A. at 482 (emphasis added).

4. There is support in the record for appellees' position that several of the pins located by Mr. Hahn were placed by someone other than the original surveyor. Because of its disposition, the lower court made no finding on this point.

appellants failed to prove an encroachment by the Halberstadts. The fact that this disposition raises issues regarding the location of the northern point of the east and west boundary lines does not of itself constitute an absurd result. Otherwise, monuments could never be held to take precedence over courses and distances. *Cf. Dallas Borough Annexation Case, supra.*

The decree of the lower court is affirmed.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.