## Patterson v. Watkins

*Robert G. Kochems,* for plaintiffs.
*James A. Stranahan, III,* for defendants.

FORNELLI, *J.,* September 6, 1983—this case was filed by plaintiffs as a "complaint to quiet title, action to compel the bringing of an action in ejectment." By stipulation 'of the parties, it was agreed that the matter could be tried without need of the defendants, Mr. and Mrs. Watkins, filing an action in ejectment and that the burden of proof as to the ejectment rested upon the defendants.

In dispute is the location of the northern boundary line of defendants' land, which was acquired by deed on January 14, 1958. Defendants' land is a corner parcel bordered on the east and south by public roads. Plaintiffs in 1973 became the owners, inter alia, of the land situate to the north of defendants' parcel.

Included among the grantors of defendants' 1958 deed were plaintiffs' predecessors in title, who joined in the deed for the expressed purpose of setting the exact north and west boundary lines of defendants' land. That 1958 deed establishes the northern boundary as the center line of a private lane which intersects with the public road on the east. The eastern boundary is established as being 425 feet along the center line of the public road from the point of its intersection with the center line of a public road which forms the parcel's sourthern boundary.

The dispute between the parties arises from the fact that the east end of the private lane referred to in the 1958 deed intersects the eastern boundary line 37½ feet south of where it should if the eastern boundary is 425 feet in length as also provided in the deed. In other words, the location of the northeast point of defendants' land is susceptible of two

locations. One is approximately 37 feet north of the other depending upon whether it is located by the intersection of the center lines of the private road on the north and the public road on the east; or by the measurement of 425 feet along the center line of the public road forming the eastern boundary.

If this were the only issue, its resolution would be simple. When there is a conflict between a monument and measurements, the monument prevails. Thus, the northern boundary would be set by the center line of the existing private lane and the northeast corner of the parcel established by the intersection of its center line with the center line of the public road on the east.

"The primary function of a court faced with a boundary dispute is to ascertain and effectuate the intent of the parties at the time of the original [conveyance]." Roth v. Halberstadt, 258 Pa. Super. 401, 406, 392 A.2d 855, 857 (1978).

Certain rules of construction have been employed by courts that are believed to provide the best indication of the parties' intention. One such rule is that monuments prevail where there is a conflict between courses and distances and natural or artificial monuments. Id. at 406, 392 A.2d at 857; Collins v. Clough, 222 Pa. 472, 481, 71 A. 1077, 1079 (1909); Podlesny v. Baranko, 82 Pa. D.&C. 281, 283-84 (1953).

Ordinarily, a road is a monument which will govern over courses and distances. Donaldson v. Fellabaum, 68 Pa. Super. 347 (1917); Felin v. Philadelphia, 241 Pa. 164, 88 A. 421 (1913); Tressler v. Shesko, 33 Somerset L. J. 87 (1971).

In the case at bar, it is clear from the deed and the testimony that the intention of the parties to the 1958 conveyance was that the private lane constitutes the northern border. The defendants in 1958

inspected the property and were present at the time that the boundaries were designated and measured for the deed. Where there is a conflict between courses and distances and a monument, the rule that the monument prevails is especially applicable where the "purchaser inspects the property and has an opportunity to see the physical boundaries." Albert v. Schenley Auto Sales, Inc., 375 Pa. 512, 516-17, 100 A.2d 605, 607 (1953) (citations omitted).

The preference of monuments over courses and distances recognizes the possibility of error in measurement as greater than the possibility of error in the existence and location of monuments used to set a boundary. As stated by Mr. Chief Justice Gibson:

"By reason of imperfection of instruments, as well as inequalities of surface and carelessness of assistants, extreme accuracy is not to be attained by the compass and chain; while, on the other hand, calls for natural objects, or, what is much the same, known and established lines of contiguous tracts, admit of perfect certainty. When a vendor, therefore, conveys by established landmarks, the subject of the grant will neither overrun nor fall short of them. They form the true boundary, and the courses and distances serve but to point towards the place."

Cox v. Couch, 8 Pa. 147, 154 (1848) (quoted approvingly in Wood v. Appal, 63 Pa. 210, 222 (1869)).

Thus it is obvious that the center line of the private lane should mark the northern boundary of defendants' land, and its intersection with the public road on the east marks the northeast point of the parcel. Defendants, however, assert that although the center line of the private lane was the northern boundary in 1958, the eastern portion of that private lane has moved southwardly since that date and,

therefore, the northern boundary of their land is to-day north of the existing lane.

The burden of proof rests upon the defendants to establish that the lane has moved and this court finds that they have not met that burden.[1]

It is clear that to support an ejectment the evidence must be sufficient to identify the land in dispute and establish the claimant's right to possession thereof. Beals v. Allison, 161 Pa. Super. 125, 127, 54 A.2d 84, 85 (1947). Seitz v. Pennsylvania Railroad Co., 272 Pa. 84, 88, 116 A.57, 57-58 (1922).

Thus by law and by agreement of the parties, the defendants Watkins have the burden of presenting definite and certain evidence that the lane has moved the present location of their northern boundary. Rodgers v. Pittsburgh, Fort Wayne & Chicago Railway Co., 255 Pa. 462, 100 A.271 (1917); Hakim v. Abe N. Solomon Realty Co., 65 Luzerne L. R. 202, 203 (1975).

Defendants assert that the eastern portion of the lane moved southwardly over the last 25 years due to changes in drainage and usage of the lane. They have not established this by a fair preponderance of evidence.

Mrs. Olive Vincent was the owner of the parcel defendants purchased in 1958 and with whom plaintiffs' predecessor joined to clarify their northern and western borders. She testified that the private road is presently located in the same place as it was in 1958; that in 1958 there were no trees on de-

---

1. Having so found, this court need not reach the questions of whether a shifting monument or courses and distances control; and whether a boundary line based upon a monument shifts when the monument shifts. See generally Wood v. Appal, 63 Pa. 210 (1869); Andrews v. Kissinger, 60 Pa. Super. 599, 603 (1915); 11 C.J.S. Boundaries, §35 (1938).

fendants' property south of the lane at its eastern end; but that trees, including pine trees, did exist north of the lane on plaintiffs land.

Plaintiff, J. Russell Patterson, testified also that in 1958 there were no trees south of the lane at its eastern end but that there were pine trees to the north of the land at that point.

Upon a view of the land this court noted the existence of trees to the north of the existing lane at its eastern end on plaintiff's land as well as the existence of the stump of a pine tree. There are no trees to the south of the land as it now exists. This corroborates the Vincent and Patterson testimony that the lane has not moved.

It is undisputed that over the last 25 years defendants never suggested that the private lane had moved until the present controversy, nor is it contested that plaintiffs and their predecessors farmed the land along most of the northern edge of the lane.[2]

Approximately 15 years ago defendants erected a fence for their cattle within a few feet of the southern edge of the private road. While defendants assert that they did not intend to place the fence on their northern property line and were not accepting the private road as it then existed as their northern line, it is not logical they would fence themselves off of at least 37 feet of their own property. Apparently all parties intended the road to be the northern

2. Plaintiffs have also resisted the ejectment on the basis of adverse possession. Because of the court's holding it is unnecessary to reach this conclusion. Defendants have presented substantial evidence that the possession and use of the lands north of the lane by the plaintiffs was not hostile and therefore lacking one of the requisites for adverse possession. See, Conneaut Lake Park, Inc. v. Klingensmith, 362 Pa. 592, 66 A.2d 828 (1949).

boundary and acted accordingly from 1958 until this suit was filed.

A consentable boundary line acquiesced in by all parties may be considered by the finder of fact. Allison v. Oligher, 141 Pa. Super. 201, 203, 14 A.2d 569, 571 (1940); Andrews v. Kissinger, 60 Pa. Super. 599, 604 (1915).

This court on its view of the land also noted that the trees and growth to the north of the private road at its eastern end is generally uniform and of similar age. If the private road did not move south over the last 25 years, it must have done so in one leap of 37 feet instead of a gradual shift southwardly. This is not, however, substantiated by the testimony.

Defendants point to the existence of a culvert pipe on top of the ground along the public road on the east in the general area of where they assert the northeast boundary point is located. Plaintiffs would infer that the pipe was removed from the ditch immediately beside where it lays and, therefore, marks the existence of the private lane as passing over the ditch at this point.

However, this culvert pipe was first seen only two or three years ago. There is no testimony as to how it got there, or from where it was taken. Plaintiffs' inferences are not sufficient to carry their burden in light of all the evidence.

Thus, the court finds the northern boundary of the defendants' land is the center line of the private lane as it presently exists and the northeast corner of the parcel is formed by its intersection with the center line of the public road on the east.[3] Accordingly, we enter the following

---

3. The location of the northwest corner of the within parcel has been set by agreement of the parties as being a pin placed by Ronald Bittler, Civil Engineer, on January 21, 1981, and this court so finds that it be the northwest corner of defendants' parcel.

## DECISION

It is ordered and directed that defendants' action in ejectment is dismissed.

Exceptions may be filed by any party to this decision or any part thereof, to the rulings on objections, to the evidence or any other matters occurring during the trial in accordance with Pa.R.C.P. 1038. If no exceptions have been timely filed, the prothonotary on praecipe shall enter final judgment on the decision in this case.