J-A02004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KAREN MARTINELLI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH E. ROWE AND PATRICIA R. | : | |
| ROWE | : | |
| | : | No. 892 MDA 2018 |
| Appellants | : | |

Appeal from the Judgment Entered May 3, 2018
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2013-06945

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 12, 2019**

Joseph E. Rowe and Patricia R. Rowe ("the Rowes") appeal from the

judgment, entered in the Court of Common Pleas of Luzerne County, granting

partial relief to both parties in this action in ejectment.  After review, we affirm

in part and reverse in part.

The Rowes and Karen Martinelli, respectively, own property located at

1605 and 1609 Wyoming Avenue in Forty Fort, Pennsylvania.  The lots are

adjacent, identical 12,500-square-foot parallelograms oriented southeast

from Wyoming Avenue.  Both lots were originally part of a single plot owned

by the R.S. Broadhead Estate.  In 1999, the Rowes purchased 1605 Wyoming

Avenue with a deck at or near their property line.  At that time, the owners of

1609 Wyoming Avenue maintained a retaining wall at or near their property

line.  In 2008, Martinelli purchased 1609 Wyoming Avenue and hired Frank

DeSarro to survey her property. Martinelli demolished the existing retaining wall and built a new one according to DeSarro's survey. In 2012, the Rowes hired Christopher Vincelli to survey their property. To ascertain the boundaries of 1605 Wyoming Avenue, Vincelli located an original stone monument from the Broadhead Estate. After his survey established the bounds of the Rowes' property, Vincelli determined Martinelli's retaining wall encroached on the Rowes' property. He, however, did not physically sight the property line to determine whether the Rowes' deck encroached onto Martinelli's property.

On December 17, 2013, Martinelli filed an action in ejectment and trespass asserting the Rowes' deck unlawfully encroached on her property. The Rowes' filed a counterclaim contending Martinelli's retaining wall encroached on their property. Both parties agreed the dispute centered on the location of the common boundary, though they agreed their deeds established the boundary as a straight line running for 250 feet.[1] After filing suit, Martinelli hired Matthew Mendola, who found the Rowes' deck primarily

_____

[1] The parties stipulated to the chain of title as established by Exhibits A and B to the Amended Complaint. N.T. Trial, 7/18/17, at 2–3. In the Rowes' deed the common border is described as running "along [the] line between Lot No. 3 and Lot No. 4 . . . South 44 degrees East two hundred fifty (250) feet to a corner" and in Martinelli's deed as running "along the line between Lot No. 3 and 4, North 44 degrees West 250 feet[.]" Amended Complaint, Exhibits A and B.

located on the Rowes' property, but encroaching slightly onto Martinelli's property.[2]

At a non-jury trial on July 18, 2017, Judge Lesa S. Gelb presiding, Mendola and Vincelli testified as to their respective surveying methods. Mendola recounted how, in preparing his survey, he took a broad perspective, examining twenty-four properties in relation to 1609 Wyoming Avenue. He, however, failed to locate a stone monument indicated by Martinelli's deed as the beginning of the survey description.[3] Vincelli testified to locating the original stone monument depicted on the Broadhead estate's plan and using that marker as a baseline for establishing the boundaries of the Rowes' property. Afterwards, Vincelli used his survey to physically set the property line by placing rebar, which showed Martinelli's new retaining wall encroached on the Rowes' property. He also admitted that the Rowes' deck may encroach slightly onto Martinelli's property, but he could not verify whether it did so based his survey alone; he would have needed to physically set the property line towards the deck to make that determination.

_____

[2] Mendola's and Vincelli's surveys differ by 9.6 inches. N.T. Trial, 7/18/17, at 25–26.

[3] The beginning of Martinelli's deed reads as follows:

> BEGINNING at a point on Wyoming Avenue 150 feet Northeasterly *from a stone monument* on the Southeasterly side of Wyoming Avenue, said stone monument being on line of land between property now or formerly of the Charles D. Shoemaker estate and the land now or formerly of the Wayne T. James Plot[.]

Amended Complaint, Exhibit A (emphasis added).

On November 27, 2017, in her findings of fact and conclusions of law, Judge Gelb found Vincelli's survey superior to Mendola's, as Vincelli's was based on a monument identified in the chain of title by a prior common property owner. The court, however, asserted "Vincelli . . . testified that he only looked at the property line as far as the rebar placed after the retaining wall." Order, 11/27/17, at 10. Consequently, the court found "Mendola's survey uncontroverted after the placement of the rebar and the property line would move accordingly." *Id.* Judge Gelb also found the Rowes failed to establish the property line by proving a twenty-one year period of acquiescence through their own interest or by tacking their predecessor's interest. Consequently, the Court created a hybrid property line, combining both parties' surveys. Judge Gelb ordered the Rowe's deck removed to the extent that it encroaches on Martinelli's property according to the Mendola survey, and Martinelli's retaining wall removed to the extent that it encroaches on the Rowes' property according to the Vincelli survey. Judge Gelb denied the Rowes' motion for post-trial relief on January 23, 2018. On February 22, 2018, the Rowes filed the instant notice of appeal.

On appeal, the Rowes aver the following:

1) Did the trial court err after it correctly determined the common boundary line was based upon the survey performed by Mr. Vincelli, PLS, but then altered the property line to define a portion of the property line in accordance with the survey prepared by Matthew C. Mendola, PLS?

2) Did the [] trial court err when it ruled that evidence of statements made by property owners and their agents should not be admitted

into evidence and considered by the court in rendering its decision on the [Rowes'] claim of a consentable boundary line by acquiescence?

Appellants' Brief, at 5.

We evaluate non-jury verdicts by the following standard:

Our appellate role . . . is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

*Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191 (Pa. Super. 2018). "The question of what is a boundary line is a matter of law, but the question of where a boundary line . . . is actually located is a question of fact." *Baker v. Roslyn Swim Club*, 213 A.2d 145, 148 (Pa. Super. 1965).

To prevail in an action in ejectment, the plaintiff must establish a right to immediate exclusive possession. *Hallman v. Turns*, 482 A.2d 1284, 1287 (Pa Super. 1984) (citation omitted). "The crux of an ejectment action . . . rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title." *Doman v. Brogan*, 592 A.2d 104, 108 (Pa. Super. 1991) (citations omitted); *see also Hallman*, *supra* at 1288 ("The burden of identifying and locating the land clearly rests upon the

plaintiff. . . . Where the plaintiff is unable to establish his boundary line by adequate legal proof, his action must fall and he is not entitled to relief.").

The court's function in an action in ejectment "is to ascertain and effectuate the intent of the parties at the time of the original subdivision." *Roth v. Halberstadt*, 392 A.2d 855, 857 (Pa. Super. 1978). We have a longstanding preference for monuments[4] as indicators of original intent over measurements and distances. *See id.* ("As a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail"); *see also Lodge v. Barnett*, 46 Pa. 477, 485 (1864) ("If titles were to depend upon the fluctuations of the compass, or errors of the chain or rod-pole . . . instead of the lines, monuments, or marks upon the ground, it would open a door to a flood of litigation.").

The Rowes argue the trial court properly afforded Vincelli's survey precedence over Mendola's, but erred when it applied Mendola's survey to a portion of the contested boundary line. We agree.

In defining the boundary at issue, the court properly highlighted the relative primacy of surveys based on monuments and determined the Vincelli survey established the property line. *See* Order, 11/27/17, at 9 (finding

---

[4] "Monuments are visible markers or indications left on natural or other objects indicating the line of a survey." *Pencil v. Buchart*, 551 A.2d 302, 306 n.2 (Pa. Super. 1988).

Mendola's failure to base survey on monuments described in Martinelli's deed rendered it inferior to Vincelli's survey) (citing *Pencil*, *supra*). As the Vincelli survey established the bounds of the Rowes' entire property in relation to Martinelli's, the court should have consistently used those measurements to maintain the integrity of the property as it was conveyed. *Halberstadt*, *supra* at 857. By failing to hold Martinelli responsible for proving, by a preponderance of the evidence, whether the Rowes' deck encroached on Martinelli's property according to the boundary line set by the Vincelli survey, the court improperly shifted Martinelli's evidentiary burden onto the Rowes. *Doman*, *supra* at 108.

In allowing Martinelli to meet her evidentiary burden using the Mendola survey, the court transformed the property line into an angled boundary, creating two five-sided properties of uncertain dimensions, whereas previously, the parties owned adjacent 12,500-square-foot parallelograms sharing a 250-foot, straight-line boundary. *Compare* Order, 11/27/17, at 10–12 (describing court's split verdict) *with* Amended Complaint, Exhibits A and B (presenting parties' titles). As it stands, the order cannot be brought into alignment with the intent of the grantors as ascertained by the plain language of both deeds—language which was not contested by either party. *See Halberstadt*, *supra* at 857 (affirming court's role as effectuating "the intent of the parties at the time of the original subdivision.").

Consequently, we affirm Judge Gelb's ruling insofar as it establishes the precedence of the Vincelli survey and requires the removal of Martinelli's retaining wall according to the boundary established by the Vincelli survey. We reverse Judge Gelb's order requiring the removal of the Rowes' deck as far as it encroaches upon Martinelli's property according to the Mendola survey.[5]

Judgment affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2019

---

[5] As reversal renders the Rowes' second issue irrelevant, this Court need not consider it.